· (Decided 18th June, 1879.)

## George W. Tinges *vs.* The Mayor and City Council of Baltimore.

*Dedication of Property to Public Use as a Public Highway— What not a Public Way.*

An intent on the part of an owner to dedicate his land to the particular use alleged, is absolutely essential, and unless such intention is clearly proved by the facts and circumstances of the particular case, no dedication exists.

One of the modes by which this intention may be established, is the sale and conveyance of lots bounding upon a street designated in the plan and plat of a city. If the vendor is the owner of the bed of such street, his lease or conveyance to the lessee or purchaser implies a grant or covenant, that the street thus indicated and called for, shall be and remain forever open' to the use of the public, free from all claims or interference of the proprietor of the estate therein inconsistent with such use.

A twenty foot alley set apart by the owners of land, between two lots. for the use thereof, is not a street or public way within the meaning of *Hawley vs. M. & C. C. of Balto.,* 33 *Md.,* 270.

Appeal from the Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the Mayor and City Council of Baltimore asked the Court to instruct the jury as follows:

If the jury shall find from the evidence that the appellant, George W. Tinges, acquired title to the property owned by him on the east side of St. Paul Street, between Townsend Street and North Avenue, referred to in the proceedings, by the deed from Hiram Woods, in evidence in this case, and that said Woods acquired title to the same by deed or deeds from William F. Cooke and wife, Warren E. Cooke and wife, and Euphrasia F. Cooke, and that the said Cookes were the owners of the property lying in the bed of St. Paul Street, marked " Lot G," on the plat in this case, and on both sides of said street, between Townsend Street and the Hanson Mill road, and that prior to said conveyance to Hiram Woods, and to the passage of the ordinance for opening St. Paul Street, under which the present proceedings were taken, the said Cookes had leased portions of said property between Townsend Street and the Hanson Mill road, and in the said lease described the lots so leased as bounding on the east side of St. Paul Street, then said leasing was a dedication by said Cookes of the portion of the bed of St. Paul Street, between Townsend Street and the Hanson Mill road, so owned by them, and marked " G," on the said plat, to the use of the public, and the said Tinges is entitled to nominal damages only, for the portion of the bed of St. Paul Street, claimed by him, and taken by the Mayor and City Council for the purpose of opening said street, and that the verdict of the jury must be for the appellees.

The appellant asked the Court to instruct the jury as follows:

1. The appellant prays the Court to instruct the jury, that it is absolutely essential that an intent on the part of the lessors of the Baltimore City Passenger Railway Company, to dedicate that part of the bed of St. Paul Street, which lies to the south of the 20 foot alley referred to in the lease to that company, should be proved.

2. That there is no evidence to be found in the lease from the lessors of the Baltimore City Passenger Railway Company of the square of ground included between the boundaries of Calvert and St. Paul Streets, and North Avenue, and the 20 foot alley in the rear, as described in the lease offered in evidence, of an intention on the part of said lessors to dedicate any other streets or alleys, or parts of streets and alleys, than those which surrounded and bounded upon the said square.

The Court (PINKNEY, J.,) granted the instruction asked for by the Mayor and City Council of Baltimore, and rejected those asked for by the appellant. Tinges excepted; and the allowance to him by the Commissioners for Opening Streets, of nominal damages, having been affirmed by the Court below, he appealed.

The cause was argued before BARTOL, C. J., BRENT, MILLER, GRASON and ROBINSON, J.

*William F. Frick,* for the appellant.

The main question in the case is simply, as to the construction of the lease from the Cookes to the Baltimore City Passenger Railway Company. The case of *Hawley vs. M. & C. C. of Balto.,* 33 *Md.,* 280, announces the modern doctrine as found in the New York and other cases to be that the "dedication" imputed by law to the owner of vacant ground, who sells lots *bounding* upon streets laid out upon a city plan, is founded upon the covenant *implied* from the terms of his grant, that his grantee is to have the use of such streets when open, free of charge. Therefore as the dedication arises from this implied covenant, it must necessarily be "co-extensive with the right of way acquired as an easement by the purchaser." "It must necessarily be measured by the limits of the right he has acquired by virtue of his grant."

It is quite clear then, that the extent of the imputed dedication in this case is to be determined and limited by

the rights acquired by the lessee under its deed; and those are to be ascertained from the terms of the deed and the situation of the property at the time. Whatever easements were fairly intended to be granted, the lessor is under an *implied covenant* to allow—or as it is sometimes said, is *estopped* from disputing; the effect being the same, under either view of the case. And it is also clear, that as the extent of the implied covenant, or estoppel, depends upon the presumed *intention* of the party who is to be held bound by it, that intention is to be ascertained, like any other fact. It is not to be imputed to a party, upon any arbitrary legal rule of construction of his grant. *McCormick vs. Mayor, &c.,* 45 *Md.,* 524.

What was the intention of the lessors, in respect to the use of St. Paul Street, by their lessee, which "is clearly proved by the facts and circumstances of this particular case?" North Avenue was at the time a wide and open thoroughfare. Neither St. Paul, nor Calvert Street, nor any streets crossing them between North Avenue and the Falls, were then opened or used. The whole territory was an uninclosed common. The Railway Company wanted a lot at its terminus on North Avenue for the use of its business. It leased a square of ground fronting 264 feet on North Avenue, lying between St. Paul and Calvert Streets, and running back 175 feet to a 20 foot alley. The lessors in describing the property *bounded it* on these four streets or ways and granted especially, *the use of the 20 foot alley.* It is a reasonable presumption of fact that they intended the company to have the use of all the streets and ways *surrounding* the square, so as to give a free outlet all around it, to and from North Avenue, which was then the only open highway. But where in the terms of the grant, or in the facts of the case, is there any clear proof, (it may be said, any proof at all) of any intention to grant further and remote easements, either on St. Paul or Calvert Streets, or of the necessity or even expectation of any such, on the part of the lessee?

The contention on the part of the City, seems to proceed upon the theory, that the law will presume an intention of the grantor, in these cases, to grant always an easement through his property from one "street" to another "street," so called. But this Court has not laid down any such rule. "Until it reaches some other street, *or public way* and *no further,*" is the language of the Court in 33 *Md.,* 280. Now if the idea of the appellee be, that the "street or public way," here meant, must necessarily be one of wide dimensions, then the language would not reach the case of some "streets" at all. There are "streets" in Baltimore City, so-called, of the width of 20, 30, 40, 66, 100, and even 150 feet. There are streets, so-called, 20 feet wide, built up on both sides with dwelling houses, small indeed; but nevertheless they are "streets." Now the public way in this case, 20 feet wide, happens to be called an alley; but it is nevertheless clearly a "*public way,*" laid down on Poppleton's plat to be opened as such, and quite as wide as some ways that are called "streets." We are to understand by the generic term "street," any public city-way, without reference to its width or extent of public user.

*James L. McLane,* for the appellee.

The appellee maintains, that there has been a complete and irrevocable dedication of the bed of St. Paul Street, between Townsend Street and North Avenue, so far as the same is included in the lot of the appellant. 1. By the lease made to Mankin in 1851, of lots binding on the said St. Paul Street, as laid out and designated on the plat prepared at the time, and in connection with such disposition of the property; and 2. By the lease of lot B, to the City Passenger Railway Company, calling to bind on the same street.

The trustee was appointed, in a proceeding in which all parties in interest were properly represented, for the

express purpose of *selling* or *leasing,* to the best advantage, a tract of several acres of unimproved land, extending from Jones' Falls to North Avenue. He divided the property into lots and streets, and exhibited the same on a plat prepared for the purpose, and afterwards filed in the cause in the Baltimore County Court. He put the property on the market, and actually leased a portion of it binding on the east side of St. Paul Street, as shown on his plat, and as it is now proposed to be opened by the appellee. In like manner the Cookes themselves, being all of full age, and owning the entire block of ground between Townsend Street and North Avenue, and having full knowledge of the plat previously prepared by the trustee, and then on file in the equity proceedings already mentioned, made the lease of July, 1867, to the City Passenger Railway Company, calling to bind on the same St. Paul Street.

The law is now well settled in this State, that the owner who lays out his land into lots and streets, and sells lots calling to bind on such streets, although the same remain, at the time, unopened under the authority of the corporation, thereby dedicates the streets so laid out to the *public use.* The vendor and all claiming under him will be held bound by the lines and designations by which the property has thus been sold; and in such a case there can be no claim interposed for damages, for the reason "that the party, having given the ground to the community, can set up no claim to be compensated for it." *White vs. Flannigan,* 1 *Md.,* 540; *Moale vs. Mayor, &c.,* 5 *Md.,* 321; *Hawley vs. Mayor, &c.,* 33 *Md.,* 280; *McCormick vs. Mayor, &c.,* 45 *Md.,* 523.

Whether the party conveying the lots bounds them on a street designated on a plat made by authority, or by himself, he remaining the owner of the fee of the street bed, the rule of law is the same; he is to be held as having dedicated the land over which the street passes to the

public use, and on the opening of the street will be entitled to nominal damages only as compensation. *McCormick's Case,* 45 *Md.*, 524; *Wyman vs. Mayor,* 11 *Wend.*, 486; *Livingston vs. Mayor,* 8 *Wend.,* 85; *Matter of Lewis St., N. Y.,* 2 *Wend.,* 472; *United States vs. Chicago,* 7 *How.,* 196; *Irwin vs. Dixon,* 9 *How.,* 30, 31; *Washburn on Eas.,* (*3rd Ed.,*) 202.

It is a presumption of law that the existence of the street thus indicated and called for entered into the consideration of the purchase, and that the vendor has thus been compensated for the public use of the street. "He is, therefore, estopped to make further claim for such use *as against the public.*" *McCormick's Case,* 45 *Md.,* 525.

In such a case nothing is required to be done by the public to perfect the dedication, nor is it essential to the validity of such act that the space thus dedicated should, at once, be used by the public for that purpose, or that it should be so used within any limited time, in the absence of any condition to that effect. *McCormick's Case,* 45 *Md.,* 523; *Barclay vs. Howell,* 6 *Peters,* 504–5; *Washburn Eas.,* (*3rd Ed.,*) 195; *Stone vs. Brooks,* 35 *Cal.,* 489.

The dedication results directly and entirely from the act of the owner in conveying his lots in a manner and under circumstances which the law holds to evidence an intention on his part to give the streets to the public. Such owner will not be permitted afterwards to recall his gift, or otherwise avoid the consequences of his own solemn act. So far as the public is concerned, it can make no difference whether the lots so conveyed remained the property of third persons or returned to the first owner. The vendor is estopped from denying that the public has a right to enjoy what he has thus dedicated to its use, or from revoking what he has declared by his acts. *City of Cincinnati vs. White,* 6 *Pet.,* 431; *M. E. Church vs. Hoboken,* 33 *New Jersey,* 13; 2 *Dillon on Mun. Cor., sec.* 495, *n.* 2; *Angell on Highw., sec.* 149.

BRENT, J., delivered the opinion of the Court.

The Mayor and City Council of Balimore passed an ordinance in May, 1877, to condemn and open St. Paul Street from John Street to North Avenue, as laid down on Poppleton's Plat.

The Commissioners for Opening Streets in the exercise of the duties required of them by this ordinance, having ascertained that the appellant was the owner of one-half of the bed of the proposed street, from Townsend Street North 182 feet to a twenty foot alley, condemned the same and allowed therefor only nominal damages.

An appeal was taken to Baltimore City Court, where the judgment and action of the Commissioners were reviewed and affirmed.

From that Court the present appeal is taken, and involves the propriety of the action of the Court in granting the instruction to the jury asked for by the appellee, and in refusing the second instruction asked for by the appellant.

The facts in the case, as they appear from the record, are but few and these are undisputed.

Lot A, owned by the appellant, the twenty foot alley above referred to, and Lot B, owned by the Baltimore City Passenger Railway Company, as designated upon the plat filed in the case, and constituting about three-fourths of the square from Townsend Street to North Avenue, and from St. Paul Street to Calvert Street, were formerly owned by the Cookes. Their possessions also extended West of St. Paul Street, to what was known as the Hanson Mill road, thereby making them the original owners of the bed of that street from Townsend to North Avenue.

In March, 1851, two of the Cookes, William F. and Warren E., being minors, Charles F. Mayer, was appointed a trustee by the decree of Baltimore County Court to lease this property. He accordingly effected a

lease for 99 years to Henry Mankin of several lots, and among them was the lot now owned by the appellant. This lease was executed in September, 1854, and the lot in question is thus described:

"Beginning for the same at the North-East Corner of St. Paul Street and Townsend Street, and running thence on St. Paul Street Northerly 173 feet to an alley 20 feet wide, to be laid out at the distance of 175 feet to the Northerly side of said alley from the South side of North Avenue as widened to 150 feet; thence Easterly on that alley and parallel to Townsend Street, (wherewith said alley is to be parallel) 122 feet to Hargrove Alley, then Southerly on Hargrove Alley 173 feet to Townsend Street, then Westerly on Townsend Street, 122 feet to the beginning."

Mankin failing to pay the rents reserved by this lease, the trustee, Mayer, brought an action of ejectment against him, and on the 7th of July, 1857, recovered a judgment which was subsequently enforced by a writ of possession.

After this lease and re-entry, and before any other disposition of the lot, now owned by Tinges, was made, the Cookes, all of whom had arrived at majority, executed a lease for 99 years to the Baltimore City Passenger Railway Company of Lot B, designated on the plat. This lease was made on the 17th of July, 1867, and the lot is described as follows:

"Beginning for the same at the corner formed by the intersection of the South side of North Avenue and the West side of Calvert Street, and running thence Westwardly bounding on the South side of North Avenue 264 feet to St. Paul Street, thence Southwardly bounding on the East side of St. Paul Street 175 feet to a 20 foot alley; thence Eastwardly bounding on the North side of said alley, with the right, use and privilege thereof, and parallel with North Avenue 264 feet to Calvert Street, and thence Northwardly bounding on the West side of Calvert Street 175 feet to the beginning."

In May, 1877, the appellant acquired title to the lot in question, deriving the same through the Cookes by a deed to him from Hiram Woods, trustee, and others.

Upon these facts the Court instructed the jury that if they found from the evidence, the Cookes were "the owners of the property lying in the bed of St. Paul Street," from Townsend Street to Hanson Mill road, (now North Avenue,) and that prior to the conveyance to Hiram Woods, and to the passage of the ordinance for the opening of St. Paul Street, the said Cookes had leased portions of said property between Townsend Street and the Hanson Mill road, and in the said leases had described the lots so leased as bounding on the East side of St. Paul Street, then said leasing was a dedication of the bed of St. Paul Street so owned by them from Townsend Street to Hanson Mill road, and refused to instruct them, as prayed by the appellant, that there is no evidence to be found in the lease to the Baltimore City Passenger Railway Company of any intention to so dedicate that part of St. Paul Street.

It is well settled by the decisions of this Court that an intent on the part of the owner to dedicate his land to the particular use alleged is absolutely essential, and unless such intention is clearly proved by the facts and circumstances of the particular case no dedication exists. *McCormick, et al. vs. Mayor, &c. of Baltimore*, 45 *Md.*, 524. It is not necessary to enumerate the several modes by which this intention may be established. One of them is the sale and conveyance of lots bounded upon a street, designated in the plan and plat of a city. If the vendor is the owner of the bed of such street, his lease or conveyance to the lessee or purchaser implies a grant or covenant, that the street, thus indicated and called for, shall be and remain forever open to the use of the public free from all claims or interference of the proprietor of the estate therein inconsistent with such use. 45 *Md.*, above cited.

The lessors of lot B to the City Passenger Railway Company were the owners of the bed of St. Paul Street from Townsend Street to North Avenue at the time of their lease. In binding this lot in their deed of lease on the East side of St. Paul Street it was clearly a dedication of that street as far south as Townsend Street. This is not only settled by the principle announced in the case just referred to, but comes strictly within the case of *Hawley vs. Mayor, &c. of Baltimore*, 33 *Md.*, 270. There it was held that the purchaser of a lot calling to bind on a street not yet opened by the public authorities, is entitled to a right of way over it, if it is the lands of his vendor, until it reaches some other street or public way. The appellant seeks to confine this doctrine, and limit it in the present case to the 20 foot alley, which was set apart by the Cookes for the use of lots A and B, and which extends eastwardly to Calvert Street. This is not a street or public way within the meaning of the case in 33 *Md.* The first street or public way southwardly from North Avenue down St. Paul is Townsend Street, and to this street the dedication to the public use of St. Paul Street must be held to extend by the terms of the lease of lot B to the Railway Company.

If the case rested alone upon the lease of Mayer, trustee, to Mankin, we would not hold it to be sufficient evidence of a dedication. But taken in connection with the subsequent lease of lot B, we think it is strongly corroborative of the dedication established by the terms of that lease.

From these views it follows, that we think there was no error in the instructions given by the City Court.

*Judgment affirmed.*

(Decided 19th June, 1879.)