## THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* ACHSAH C. FRICK AND OTHERS.

*Dedication of Streets—Private Map Calling for Street—Acceptance of Street by the Public—Extent of the Dedication.*

If in the deed conveying land it is described as fronting or binding on an unopened street, owned by the grantor, which street is designated on a public map or private plat, such description generally operates as a dedication of the street.

In such case it is not necessary that the map should be referred to in the conveyance, nor need it be affirmatively shown that the map was before the grantor.   It is sufficient if he was informed as to the location of the street on the plat and executed the conveyance accordingly.

It is not essential to the validity of such dedication that the street should be used at once for that purpose, and the rights of the public are not lost by mere lapse of time without any other evidence of abandonment, nor by the fact that the bed of such street has been dug up for clay for brick making.

The purchaser of a lot calling to bind on an unopened street, the property of the grantor, is entitled to a right of way over it to its full dimensions only until it reaches some other street or public way. And the street which limits the extent of the dedication is the next existing public street, whether the same be actually used as such or not.

The owner of a tract of land conveyed a part of it by a description which called for B street, then unopened, as one of the boundaries. The bed of B street for a considerable distance was owned by the grantor, and designated as a street on his private plat.    At that time the next street crossing B street, was dedicated, but not actually used as such by the public.    The nearest cross street actually used was two blocks distant.    *Held*, that the dedication of B street effected by the conveyance, did not extend beyond the street dedicated, but not then actually used.

These were six appeals in one record from the Baltimore City Court.    The Street Commissioners of said city in their proceedings for opening Bayard street from Columbia avenue to Ohio avenue, treated the bed of Bayard street as having been dedicated to public use by a lease hereafter referred to from James Carroll to Porter and Davis.    Five appeals from their action were taken by property owners to the Court below, where the cases were consolidated and tried before the Court without a jury.    All the property involved was formerly owned by James Carroll, and was called Mount Clare.    In March, 1872, he executed to William E. Porter and Henry G. Davis a lease for 99 years, renewable forever, at a gross annual rental of $455.25, of an entire block of ground described as follows :

" Beginning at the intersection of the southwest side of Wooster street and the northwest side of Herkimer street, as said streets are now laid out by James Carroll, and running thence southwesterly, bounding on the northwest side of Herkimer street, four hundred and seventy-eight feet nine inches, to Bayard street ; thence northwesterly, binding on northeast side of Bayard street, three hundred and seven feet two inches, to southeast side of Ohio avenue ; thence northeasterly, binding on southeast side of Ohio avenue, five hundred and three feet, to Wooster street ; and thence southeasterly, binding on southwest side of Wooster street, one hundred and fifty-three feet, to the place of beginning ; containing two acres, three roods and four and two-thirds perches."

The block of ground demised by this lease is bounded on

three sides by public streets or highways, *i. e.,* Wooster street, which was a much-used thoroughfare, and Ohio avenue, which had then already been opened, and Herkimer street, which the lease itself describes as "now laid out" by the lessor.

PLAT. USED IN PARTITION CASE OF CARROLL IN 1888.

After the death of James Carroll a partition of Mt. Clare was made, in which the land lying adjacent to and in the bed of Bayard street, as proposed to be opened, was allotted to certain of his heirs or devisees, and portions thereof

have, since the partition, passed into the hands of other parties.

It appears, by the admission in the Record, that at the time of the making of the lease from Carroll to Porter there was in existence a plat of Mt. Clare by which Bayard, Wooster, Herkimer and James streets and Washington avenue were located in the same position as they appear upon the partition plat of a portion of which a copy appears on the preceding page, but there was no evidence produced at the trial below, tending to show that this plat was exhibited at the time of, or in connection with, the making of the lease from Carroll to Porter and Davis, or that it was taken into consideration by any of the parties to the lease at the time the same was made or bore any relation thereto. The lease itself does not call for or refer to any plat.

Some of the appellants are owners of the bed of that part of Bayard street lying immediately in the rear of and abutting on the lot leased by Carroll to Porter and Davis, and others of them own that part of the bed of the street which is not contiguous to the leased lot but lies between Herkimer street and Washington avenue and which comprises by far the greater part of the land involved in the controversy.

The lot of ground leased by Carroll to Porter and Davis was not included in the official plat of Baltimore City known as Poppleton's Plat. At that time Washington or Columbia avenue was a much used public highway, Ohio avenue had been formally dedicated to public use by deed duly executed and recorded, and Wooster street was also a much used public highway. What has been opened as Bayard street had not then been, and has never since been, used for travel or as a highway and has not been in a physical condition to be so used, and there was not at the time of the making of the lease nor has there since then been any indication on the ground of the presence of a street there.

At the trial the property owners offered the following prayers :

I.—That the lease of March 16, 1872, from James Carroll to William E. Porter and Henry G. Davis, construed with reference to the facts and circumstances surrounding the transaction and given in evidence, does not establish any intention on the part of the lessor to dedicate the bed of Bayard street, as delineated on the condemnation plat in these proceedings, or any part thereof, to the public use. (Granted.)

II.—That under a proper construction of the lease of March 16, 1872, from James Carroll to William E. Porter and Henry E. Davis, in the light of the facts and circumstances surrounding the transaction and given in evidence, the said lease did not have the effect of dedicating, and must be held not to have dedicated the bed of Bayard street as delineated on the condemnation plat of these proceedings, or any part thereof, to the use of the public. (Rejected.)

III.—That under a proper construction of the lease of March 16, 1872, from James Carroll to William E. Porter and Henry G. Davis, in the light of the facts and circumstances surrounding the transaction and given in evidence, the said lease did not· have the effect of dedicating, and must be held not to have dedicated the bed of Bayard street as delineated on the condemnation plat filed in these proceedings, between Herkimer street and Columbia avenue. (Rejected.)

The Court below (PHELPS, J.), granted the first of said prayers, to which action the Mayor and City Council of Baltimore excepted ; and the Court rejected the second and third prayers, to which action the property owners excepted.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, ROBERTS and BOYD, JJ.

*Thomas G. Hayes, City Counsellor,* and *William S. Bryan, Jr., City Solicitor,* for the Mayor and City Council of Baltimore.

*Samuel D. Schmucker, Thomas B. Mackall* and *Henry Stockbridge, Jr.,* (with whom was *George Whitelock* on the brief), for the property owners.

FOWLER, J., delivered the opinion of the Court.

The questions here presented arise upon the appeals of certain land owners from the action of the Baltimore City Court in awarding damages and benefits in the matter of the opening of Bayard street in that city.

No objection has been made to the inquisition by reason of the amounts of damages awarded or benefits ascertained. On the contrary, it is conceded that both are properly estimated and set forth in the inquisition, unless it should be ascertained that the land to be taken had already been dedicated to public use, in which case, of course, the land owners could claim no damages.   In addition to the first prayer of the property owners, which was granted, by which it was held that no part of Bayard street as condemned, had been dedicated by the lease which will presently be referred to, they asked the Court again to declare as law the identical proposition which had already been adopted by granting their first prayer.   After the Court had declared that no part of Bayard street had been dedicated, it was asked also to say that the part of said street between Herkimer street and Columbia avenue had not been dedicated.   The first prayer having been granted, it would seem to have been unnecessary to encumber the record with the other instructions.   And, no doubt, this was the view entertained by the learned trial judge, who, as we have seen, granted the first and refused the other prayers.

It is from these rulings that the six appeals now before us were taken—the City appealing from the granting of the first, and the property owners from the refusal to grant the second and third prayers.   It will thus be seen that the only question presented is that raised by the first prayer, namely, whether the lease from Carroll to Porter & Davis of March 16, 1872, construed with reference to the facts and circum-

stances surrounding the transaction and given in evidence, establishes an intention on the part of the lessor to dedicate the bed of Bayard street, as proposed to be condemned, or any part thereof to the public use, and if any part thereof, how much was so dedicated.

The doctrine of the dedication of land as and for a high-way for the use of the public has been so frequently the subject of consideration by this Court, that we think needless now to enter into any general discussion of the principles applicable to cases of this kind.   Indeed it has been found that it is very difficult to lay down any general rule applicable to all cases.   It has been said "that each individual case must be decided by itself, taking into consideration all the attendant circumstances, the condition of the respective parties and the acts, declarations and intentions of the landowner as manifested by his conduct.   For it is largely on the ground of estoppel *in pais* that the principle of dedication rests."   It has been held, therefore, in many cases (*Dovaston* v. *Payne*, 2 Smith's Leading cases, 1404, where the authorities are collected) as well as in a number of cases in this State, that it is very strong evidence of dedication where lots are sold and conveyed, laid out on a map or plat with a road or street running by them and designated as a street on such plat.   *White* v. *Flannigan*, 1 Md. 540; *Moale's case*, 5 Md. 321; *Hawley's case*, 33 Md. 280; *Tinge's case*, 51 Md. 600; *McCormick et al* v. *City*, 45 Md. 523, and others not necessary to cite.   It does not appear from any of these cases that the map or plat on which the street or public way may be laid out, must be made a part of or referred to by the deed or lease or other conveyance of the land under which the dedication is claimed to have been made, for the settled rule appears to be that if the lot is described as fronting or binding on a street which is designated on a public map or private plat, such description and calling for an unopened street raises an implied covenant that such right of way exists, and the presumption of dedication becomes conclusive, unless, as in *Pitt's case*, 73 Md.

84    M. & C. C. OF BALTIMORE vs. FRICK.

Opinion of the Court.            [82

and some others, there is language used by the grantor in his conveyance to show that no dedication to public use was intended.

Applying this rule to the lease under consideration, let us examine its provisions. We find that the lot thereby conveyed (which includes some of the lots owned by the appellant landowners,) is described as bounding on Bayard street. It. is admitted that at the time this lease was executed there was a private plat in existence on which Bayard street was laid out as now proposed to be opened and as said street was laid out on the plat used in the partition case of *Carroll* v. *Carroll.* A copy of this last named plat is also before us as part of the record. We cannot agree that the plat referred to as existing at the time the lease was made was not sufficiently brought home to lessor, James Carroll. Whether he had the plat before him or not when the lease was made does not appear, but it would seem to be reasonably certain that he and all parties interested were well acquainted with the then location of Bayard street. In his lease he locates it precisely as it is located on both plats, and his description calls for it and gives the exact number of feet and inches between Herkimer and Bayard streets, and would be faulty and imperfect if, as is now claimed, the latter street had never been located and dedicated by him. The lessor at one time owned all the land between Bayard street and Columbia avenue, and his heirs and devisees subsequently adopted in the partition case above referred to, the location of the former and other streets as they appeared on the plats. It will not do, therefore, to say that because it is not shown by any affirmative testimony that a plat was before the lessor when his lease was made, that therefore the lease was made without regard to it, for it is apparent that the lessor was fully informed as to the location of Bayard street on the plat, and that he drew his lease accordingly. Nor do we find anything in the lease which will prevent the operation of the rule above mentioned—that the sale and conveyance of a lot or lots binding on a street which is laid out on a public or private plat raises

an implied covenant that such street shall be opened to the public use, and become a public highway.

But in the second place, it was contended by the City that the whole bed of Bayard street, from Ohio avenue to Columbia avenue, had been dedicated to public use by the said lease and its recitals. We cannot, however, agree to this. It appears to us clear that only so much of Bayard street was dedicated in each direction as would enable the owners of the leased lot and their successors in title to reach some other street or public way, that is, from Ohio avenue to Herkimer street. The ruling in *Hawley's case, supra,* we consider conclusive upon the question of the extent of the dedication. This Court there said that "the doctrine of implied covenants will not be held to create a right of way over all the lands of a vendor in the bed of the street. The lands must be contiguous to the lot sold, and there must be some point of limitation. The true doctrine, as we understand it, is that the purchaser of a lot calling to bind on a street not yet opened by the public authorities, is entitled to a right of way over it, if it is on the land of his vendor, to its full extent and dimensions only until it reaches some other street or public way." And in this case the dedication, under the above rule, would extend from Ohio avenue to Herkimer street, both of which are streets or public ways— the former being open and in use by the public, while the latter has been dedicated to the public, but has never been used by it for a public way. The contention that the street which limits the extent of the dedication must be an open public street, is not supported by the cases heretofore decided by this Court. In *Hawley's case, supra,* the land over which the right of way is given, it is said, must not be remote, but contiguous to the lot sold ; but if the contention of the city, that in all cases we must presume a dedication of a right of way over the grantor's land until the next or nearest *open* street is reached be correct, such right of way would in many cases extend over land not only not contiguous, but very remote from the lot sold. No distinction

has been made by this Court in any of the cases referred to, in applying the rule just mentioned, between an open and used street and one not open, but the general rule has been always announced without reference to the limitation suggested now for the first time.   We are not disposed to give this rule such a construction that it may work an injustice to the land owner by taking his land for public use without compensation.   No one should be thus deprived of his property on the ground of a dedication, unless there has been some clear and decisive act indicating an intention to dedicate to public use.   *McCormick's case,* 45 Md. 527. And hence, the city which is here claiming exemption from the payment for land taken for a public street, will not be allowed to stand upon a mere presumption or upon a rule of construction that the grantor's deed must be taken most strongly against him.   On the contrary, it is incumbent on the city to establish clearly and beyond doubt that the dedication has been made, and that, too, to the extent claimed, and having failed in this, its contention must fail as to that part of Bayard street which lies between Herkimer street and Columbia avenue.

The remaining question is whether conceding there was a dedication of any part of the bed of Bayard street there has been an abandonment by the public.   It was urged on the part of the land owners, that inasmuch as there has been neither acceptance nor user by the public, the dedication, if any, never became complete, and that this continued non-user for twenty-five years amounts to and constitutes an abandonment.   This view, however, is not consistent with what was said by this Court in *McCormic's case, supra;* ALVEY, former Chief Judge, delivering the opinion :  "In the case of a clear act of dedication, as for a street, it is not essential to the validity of such act that the space thus dedicated should at once be used by the public for that purpose, or that it should be so used *within any limited time,* in the absence of any condition to that effect."   This being so, it follows that the dedication of Bayard street, between

Ohio avenue and Herkimer street, by the lease of 1872, was perfect and complete without either acceptance or user by the public.   And inasmuch as the public is not bound to avail itself of its rights under the dedication within any limited time, it would not be reasonable to hold that such rights have been lost by the mere lapse of time without any other evidence of abandonment.   Nor are we willing to go to the extent of holding, as contended, that because the bed of Bayard street has been from time to time dug up for clay for making bricks, and because a brick kiln was located on part of the bed of said street, until 1890, the effect of the original act of dedication has been nullified.   In *Elliott on Roads and Streets*, page 669, the learned author says that the rule best supported by reason and authority is, that the common right of highway cannot be lost by the attempted adverse possession of a private individual.   But the question of the effect of adverse possession on the rights of the public obtained under a valid and clear act of dedication is not directly presented here, for the facts above mentioned were relied on only for the purpose of showing abandonment, for which purpose they cannot be relied on if we are to be guided by what was said in *McCormick's case* as to the effect of the original act of dedication.

It follows that the first prayer should have been refused because by it the Court below declared that no part of Bayard street was dedicated by said lease, while our conclusion is that by the true construction of said lease the bed of said street between Herkimer street and Ohio avenue was so dedicated.   The second prayer was covered by the first, and for that reason was therefore properly refused. The third prayer announced the correct rule of law, namely, that the bed of Bayard street, between Herkimer street and Columbia avenue, had not been dedicated by said lease, and said third prayer should have been granted.   It follows that there was error in granting the first prayer, and in refusing to grant the third prayer.   Hence the rulings upon the first and third prayers must be reversed.   This cause will be

remanded in order that further proceedings may be had in accordance with this opinion.

> *Rulings in all the appeals reversed*
> *and cause remanded.*

(Decided December 6th, 1895.)