# THE MAYOR & CITY COUNCIL OF BALTIMORE

*vs.*

## JOHN S. L. YOST, Infant, by Nellie B. Yost, His Next Friend,

### And

## JOHN S. L. YOST, Infant, by Nellie B. Yost, His Next Friend,

*vs.*

# THE MAYOR & CITY COUNCIL OF BALTIMORE.

*Pleading: amendments; name of plaintiff; new parties; discretion of lower Court.   Streets: dedication; description in deeds; references to maps and plats.   Appeals: non-reversible errors no ground for reversal.*

There can be no reversal by the Court of Appeals for erroneous rulings, when it appears that the rulings complained of worked no injury to the party excepting.          p. 383

The title to certain property was in an infant, and on a petition for an appeal from an inquisition allowing damages and assessing benefits in condemning and opening a right of way through the property, the caption of the petition and affidavit was in the name of the infant by N. B. Y., *his next friend,* but the petition itself was signed by N. B. Y.; it was *held,* that a motion to amend the petition so as to make it read correctly, signed in the name of the infant by N. B. Y., *his next friend,* was proper and should be allowed.          p. 376

Such an amendment was not the introduction of a new party plaintiff, in violation of section 41 of Article 75 of the Code of 1912.          p. 375

The action of the Court below in allowing such amendment can not be made the subject of exception, or of review by the Court of Appeals.                              p. 376

Where a party sells property within the limits of a city and the conveyance binds it by streets designated as such in the conveyance or on a map made by the city, or by the owner of the property, there is an implied covenant that the purchaser shall have the use of such streets.                    p. 378

Where such a street is actually opened and laid out with clearly defined width and is capable of being definitely located and described, an implied covenant to dedicate the street will arise from a conveyance describing land as bordering along such street, even without reference to any maps or plats.

pp. 378-379

But in such cases the location of the road and such other facts as might be necessary to arrive at the intention of the grantor in relation to the land or extent of land that was intended by him to be dedicated should be clearly proven; for the intention of the owner to dedicate his land to such use is absolutely essential, and unless such intention is clearly shown no dedication exists.                              p. 379

Where a deed simply describes the land conveyed as bordering on a street which was only referred to once, and whose width was not given, and where there was no other evidence of any dedication, it was *held,* that no dedication could be presumed from the deed.                              p. 380

*Decided June 26th, 1913.*

Appeal and cross-appeal in one record from the Baltimore City Court (DAWKINS, J.).

The facts are stated in the opinion of the Court.

The two causes were argued together before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*Benjamin H. McKindless* (with whom was *S. S. Field* on the brief), for the Mayor and City Council of Baltimore.

*Clifton S. Brown* (with whom were *Sauerwein, Brown & Cook* on the brief), for John S. L. Yost, infant, etc.

The following are the prayers of the parties, together with the action of the lower Court thereon:

*Petitioner's First Prayer.*—If the jury find from the evidence that the petitioner, his agent or agents, exercised the right of ownership of Bonner Road, and placed or had placed upon said road signs designating said road as a private way; and further that if they find that the petitioner, or his agent or agents, had erected on said road a gate or fence, which gate or fence was erected prior to 1908, if they so find, and was maintained during 1911, if they so find, and if they further find that said gate or fence was not taken down by the authority or at the direction of the petitioner, or his agent or agents, then they must find that Bonner Road is a private and not a public road. (*Granted. Granted in connection with City's 9th Prayer and 15th Prayer.*)

*Petitioner's Second Prayer.*—If the jury find from the evidence that Bonner Road has not been dedicated, they are instructed that the measure of damage is the square foot value of the northern half of said road from the east side of Winfield Avenue to a point three hundred feet east thereof. (*Refused.*)

*Petitioner's Third Prayer.*—The jury are instructed as a matter of law that in fixing the value of the northern half of Bonner Road spoken of in the evidence, that they are not to consider the use to which said road had been put before the said property was condemned by the Mayor and City Council of Baltimore. (*Refused.*)

*Petitioner's Fourth Prayer.*—The petitioner prays the Court to instruct the jury that in awarding damages to the

petitioner they must take into consideration the value of his property before Bonner Road has been widened ten feet, and the value of said property after it has been widened said ten feet, and the measure of damage is the difference between what they find the aforesaid values to be. (*Granted.*)

*Petitioner's Fifth Prayer.*—The petitioner prays the Court to instruct the jury that there is no evidence legally sufficient from which they could find a dedication of Bonner Road. (*Refused.*)

---

*City's Prayer No. 1.*—The Court instructs the jury, that the plaintiff has offered no testimony, in this case, legally sufficient to entitle him to any other or different damages or benefits than those assessed by the Commissioners for Opening Streets, and therefore, their verdict should be in confirmation of the award of the Commissioners for Opening Streets. (*Refused.*)

*City's Prayer No. 2.*—The Court instructs the jury that the plaintiff has offered no evidence, in this case, legally sufficient to entitle him to any other or different damages for his interest in the property to be taken in the condemning and opening of Harford Road than those awarded to him by the Commissioners for Opening Streets, and, therefore, their verdict should be in confirmation of said award of the Commissioners for Opening Streets. (*Refused.*)

*City's Prayer No. 3.*—The Court instructs the jury, that, in making up their award of damages (the only matter for their inquiry is) the jury is to determine the value of the appellant's interest in the property to be taken for the proposed condemning and opening of Bonner Road, and in determining the amount of said damages they are not at liberty to indulge in vague speculations or conjecture, but shall allow only such damages as they shall find, from the evidence, is the fair market value of the appellant's interest

in said property to be taken, at the present time, in its present condition, at a fair and not at a forced sale. (*Granted.*)

*City's Prayer No. 4.*—The City prays the Court to instruct the jury, that, in estimating the damages to be awarded to the property owner, they can only award him the fair market value of his interest in the property of which the part to be taken for the proposed improvement is part, less the fair market value of his interest in so much thereof as will remain after the opening of Bonner Road. (*Granted.*)

*City's Prayer No. 5.*—The Court instructs the jury that if they shall find that the amount of damages awarded to the appellant for his interest in the property to be taken for the condemning and opening of Bonner Road is more than the fair market value of said interest in said property at the present time, in its present condition, then the jury have the right and it is their duty to reduce said award to an amount equal to a fair market value of the appellant's interest in said property at the present time, in its present condition at a fair and not at a forced sale. (*Granted.*)

*City's Prayer No. 6.*—The Court instructs the jury, that the burden of proof rests upon the appellant to establish to the satisfaction of the jury that the value of his interest in the property to be taken for the proposed condemning and opening of Bonner Road, mentioned in the evidence, is in excess of the amount awarded to him by the Commissioners for Opening Streets; and if he has not so established to the satisfaction of the jury that the value of his interest in the property to be so taken is in excess of the amount so awarded to him, then they are not at liberty to increase the amount of said award. (*Refused.*)

*City's Prayer No. 7.*—The Court instructs the jury that if they shall find from the evidence that the property of the appellant abutting on Bonner Road, mentioned in the evidence, after the same is condemned and opened, will be benefited by said condemning and opening as a public road

or highway, then they are to assess such benefits against said property as it is, in their opinion, from the evidence, fairly and reasonably apparent that said property of such abutting owner will receive from the proposed improvement, other than the general benefit to the community at large. (*Granted.*)

*City's Prayer No. 8.*—The Court instructs the jury, that the measure of damages of the property here being condemned is the fair market value thereof as it stands now, between a purchaser willing but not anxious to buy, and a seller ready but not compelled to sell. (*Granted in connection with City's 5th prayer.*)

*City's Prayer No. 9.*—The Court instructs the jury, that if they shall find from the evidence in this case that Bonner Road from Garrison to Winfield Avenues was dedicated to public use as a public highway, then said John S. L. Yost is entitled to nominal damages only for that portion of the bed of said Bonner Road so dedicated. (*Granted.*)

*City's Prayer No. 10.*—The Court instructs the jury, that the undisputed evidence shows that Bonner Road, 40 feet wide between Garrison and Winfield Avenues, is dedicated to public use, and, therefore, for so much of said road claimed by John S. L. Yost as has been so dedicated, that is to be taken by the Mayor and City Council of Baltimore in the present proceeding for the opening of Bonner Road, the said John S. L. Yost is entitled to nominal damages only. (*Refused.*)

*City's Prayer No. 11.*—The Court instructs the jury, that if they shall find, from the evidence, that Nellie Bonner Yost was seized and possessed of the land lying in the bed of Bonner Road, as described in the evidence, from Garrison Avenue to Winfield Avenue, and of certain land on the sides of said road, and that prior to the passage of Ordinance No. 681 of the Mayor and City Council of Baltimore, approved April 29, 1911, offered in evidence, and whilst being so seized and possessed of said land lying in the bed of Bonner

Road, and on the side thereof, the said Nellie Bonner Yost conveyed a portion of the land owned by her fronting on the side of said road, between the avenues aforesaid, and in the conveyance thereof described the lot so conveyed as bounding on the south side of Bonner Road, and in said conveyance did not reserve said Bonner Road from dedication, then said conveyance was and operates as a dedication to the use of the public of the bed of Bonner Road so owned by her at the time of said conveyance from Garrison Avenue to Winfield Avenue. (*Refused.*)

*City's Prayer No. 12.*—The Court instructs the jury, that if they shall find from the evidence, that Nellie Bonner Yost was seized and possessed of the land lying in the bed of Bonner road, as described in the evidence, from Garrison avenue to Winfield avenue, and of certain land on the sides of said road and that prior to the passage of Ordinance No. 681 of the Mayor and City Council of Baltimore, approved April 29, 1911, offered in evidence, and whilst being so seized and possessed of said land lying in the bed of Bonner road, and on the side thereof, the said Nellie Bonner Yost conveyed a portion of the land owned by her fronting on the side of said road, between the avenues aforesaid, and in the conveyance thereof described the lot so conveyed as bounding on the south side of Bonner road, and in said conveyance did not reserve said Bonner road from dedication, then said conveyance was and operates as a dedication to the use of the public of the bed of Bonner road so owned by her at the time of said conveyance from Garrison avenue to Winfield avenue. And if the jury shall further find, that, thereafter, the said Nellie Bonner Yost conveyed to John S. L. Yost a certain tract of ground, which included a portion of the ground on the side of said Bonner road and a portion of the land lying in said Bonner road, between Garrison and Winfield avenues, then said John S. L. Yost is entitled to nominal damages only for that portion of the bed of said Bonner road, above mentioned, claimed by him, and to be taken by the Mayor

and City Council of Baltimore for the purpose of opening said Bonner road. (*Refused.*)

*City's Prayer No. 13.*—The Court instructs the jury, that if they shall find from the evidence that the appellant, John S. L. Yost, acquired title to the property owned by him on the north side of Bonner road, as heretofore existing between Garrison and Winfield avenues, referred to in the proceedings, by deed from Nellie Bonner Yost, in evidence in this case, and that, theretofore, said Nellie Bonner Yost was the owner of the property lying in the bed of Bonner road between Garrison and Winfield avenues, and on both sides of said road, and that prior to said conveyance to him, and to the passage of the ordinance of the Mayor and City Council of Baltimore for the opening of Bonner road, under which the present proceedings were taken, the said Nellie Bonner Yost conveyed to Mrs. Moog a portion of said land between Garrison and Winfield avenues, and in the said conveyance described the lot so conveyed as bounding on the south side of said Bonner road, then said conveyance was a dedication by said Nellie Bonner Yost of the portion of the bed of said Bonner road then owned by said Nellie Bonner Yost between Garrison and Winfield avenues to the use of the public, and the said John S. L. Yost is entitled to nominal damages only for the portion of the bed of said Bonner road, dedicated as above mentioned, claimed by him, and to be taken by the Mayor and City Council of Baltimore for the purpose of opening of Bonner road. (*Refused.*)

*City's Prayer No. 14.*—The Court instructs the jury that, by the true construction of the several deeds from Nellie Bonner Yost to Mrs. Moog, Mr. Miller et al., trustees, Gladys D. Yost, John T. Ford and Mabel B. Yost, respectively, offered in evidence, the grantees therein and their assigns are entitled to the use of the bed of Bonner road, as mentioned and called for in said deeds; for the use and benefit of the lots fronting thereon, respectively; and the appellant in this case can, therefore, only recover such damages for the

land lying in the bed of Bonner road, mentioned in said deeds, as the jury may find the said John S. L. Yost will sustain by the condemnation of said bed of Bonner road as a public highway, taking into consideration the fact that he holds the bed of said road subject to said right of way. (*Granted.*)

*City's Prayer No. 15.*—The Court instructs the jury, that if they shall find from the evidence, in this case, that Bonner road between Garrison avenue and Winfield avenue did, at any time after the 8th day of April, 1908, for a period of one year, connect with, open into, or lead to or from any public street, lane, alley or way of Baltimore City, and that passage between said Bonner road and said public street, lane, alley or way, was not barred or obstructed by a wall, fence, or similar structure erected along the dividing line between them either without a gate or gates therein, or with a gate or gates kept closed at all times except when in actual use, shall be conclusively presumed to have been dedicated by the owner or owners thereof to public use as a public highway. (*Granted.*)

PATTISON, J., delivered the opinion of the Court.

This is an appeal and cross-appeal from an inquisition of a jury in the Baltimore City Court allowing damages and assessing benefits to John S. L. Yost, an infant, in condemning, opening and widening Bonner road, located within the limits of Baltimore City.

The first exception is to the action of the Court in permitting an amendment to the petition by which an appeal was taken from the award of the Commissioners for Opening Streets.

The caption of said petition when filed was *"John S. L. Yost, by Nellie B. Yost, next friend,* v. *The Mayor and City Council of Baltimore,"* and the name of the petitioner, as therein stated, was "Nellie B. Yost." To the petition was attached an affidavit to the truth of the matters and things therein alleged, made by Nellie B. Yost "as next friend." A

motion was made by the plaintiff in open Court "to amend
the petition in the body thereof by interlineation, by adding
before the name of Nellie B. Yost the words 'John S. L.
Yost, infant, by,' and after the name of Nellie B. Yost the
words 'next friend,' so that it will read 'John S. L. Yost,
infant, by Nellie B. Yost, next friend.'" A motion had
previously been made by the Mayor and City Council of Bal-
timore to dismiss the petition. The latter motion, however,
was overruled and the amendment asked for permitted to be
made.

It is contended by the defendant, the Mayor and City
Council of Baltimore, that as shown by the petition aforesaid
the appeal was not taken in the name of the infant by his
mother Nellie B. Yost as next friend, but by her individ-
ually, and that by the amendment an entire new party plain-
tiff was introduced or made, in violation of section 41 of
Article 75 of the Code of 1912.

We cannot agree with the defendant in this contention.
It should be borne in mind that it was to the infant, John
S. L. Yost, the owner of the property affected by the open-
ing and widening of said road, and not to the mother, Nellie
B. Yost, that damages were allowed and benefits assessed.
She was in no way interested in or affected by the award
appealed from except as mother of the infant plaintiff, and
she could not in her own right appeal from said award; as
to such appeal she could only act as the next friend of the
infant.

It is true, we find that the petition is signed by her and
that her name appears therein as petitioner, but we also find
attached to said petition the affidavit made by her "as next
friend;" and in the caption of the petition the plaintiff or
petitioner is named as "John S. L. Yost, by Nellie B. Yost,
next friend."

To us it is sufficiently shown by the petition, when consid-
ered as a whole, in connection with the proceedings of the
commissioners and the purpose for which it was filed, that

the appeal was taken in the name of the infant by the mother as next friend.

The effect of the amendment was not to make an entire new plaintiff, as contended by the defendant, but to make all parts of the petition conform to the fact shown by it, that the appeal was taken in the name of John S. L. Yost, infant, by Nellie B. Yost, next friend.

The Court acted within its power in permitting the amendment to be made, and therefore it is not the subject of exception nor of review by this Court. *Thillman* v. *Neal,* 88 Md. 525.

In this case Nellie B. Yost acquired the lands on both sides of what is now Bonner road, as well as the bed of said road, between Garrison avenue and Winfield avenue, by deed from Fielder C. Slingluff and Frank Slingluff, trustees, dated April 15, 1901. Upon this land she built a dwelling near Winfiled avenue and opened a road or lane twenty feet in width over said lands leading to it from Garrison avenue, and called it Bonner road. Later she built a second house, adjoining the one in which she lived. This she sold in 1903 to Mrs. Wilhelmina Moog. In the deed to her the property is described as the lands on the south side of Bonner road, and in it there is no reservation of Bonner road from dedication. Later she sold and conveyed other lots south of Bonner road and binding upon it, two in 1905 and one in 1906. Each of these deeds contained a clause reserving the road from dedication. In 1906 she conveyed to her daughter, Mabel B. Yost, a lot on the north side of Bonner road. At the same time she conveyed unto her son John S. L. Yost the remainder of said lands on the north side of said road, and later, in 1910, she executed a confirmatory deed to her son, the necessity for which arose from some error or irregularity in the description contained in the first deed. The description of the land in the two deeds to her son included the entire bed of Bonner road, except that which passed to her daughter under the deed above mentioned.

In 1911 the city determined to open and widen Bonner road for public use, and condemnation proceedings were accordingly instituted. In these proceedings Bonner road was regarded as having a width of forty feet and was to be widened ten feet, making it thereafter fifty feet in width.

For the strip of land ten feet in width extending a distance of three hundred feet, to be used for widening said road, and designated in the proceedings as Lot B, John S. L. Yost was awarded the sum of five hundred dollars, and for the strip of land twenty feet wide, designated as Lot E, lying immediately south of Lot B, and regarded in the proceedings as the northern half of Bonner road, he was awarded the sum of one dollar, and the remaining portion of his land was assessed, for benefits, the sum of three hundred dollars. The rights of the plaintiff, if any he had, in the southern half of Bonner road, as mentioned in the condemnation, do not seem to have been considered, or if so, no damages were awarded to him therefor.

Upon appeal to the Baltimore City Court John S. L. Yost was awarded by the jury for both lots, B and E thirteen hundred and fifty-one dollars, and was assessed, for benefits, the sum of three hundred dollars.

It is contended by the city that Bonner road, of the width of forty feet, was dedicated to public use by Nellie B. Yost by the aforesaid conveyance to Wilhelmina Moog, in which the lot of land so conveyed is described as *binding* on Bonner road, and in which deed there is no clause reserving the road from dedication, and that by reason of such dedication the plaintiff is entitled only to nominal damages therefor. It is upon this deed that the defendant chiefly relies to establish the dedication of the road, of the width of forty feet, to public use.

The plaintiff contends, however, that there is no implied covenant to be found in said conveyance by which Bonner road was to be dedicated to public use, inasmuch as there was no map or plat upon which the said road was located or

designated in existence at the time of said conveyance, and that without such map or plat the language found in the deed describing the lot conveyed as binding on Bonner road could not have the effect sought to be given to it by the defendant. The record does not disclose that there was such a map or plat.

This Court has said in the case of *White* v. *Flannigan,* 1 Md. 540, and in a number of subsequent cases, "that where a party sells property lying within the limits of a city, and in the conveyance, bounds such property by streets designated as such, *in the conveyance,* or on a map made by the city, or by the owner of the property, such sale implies, necessarily, a covenant that the purchaser shall have the use of such streets." *Moale* v. *Mayor, etc.,* 5 Md. 321; *Clendenin* v. *Md. Cons. Co.,* 86 Md. 83; *Hawley* v. *Mayor and City Council of Baltimore,* 33 Md. 280, and others.

The plaintiff, in support of his contention, has referred us to the cases of *Mayor and City Council* v. *Frick,* 82 Md. 83; *Canton Co.* v. *Mayor and City Council,* 106 Md. 69, and *Mayor and City Council* v. *Northern Central Ry. Co.,* 88 Md. 427.

In the first of these cases the Court said: "The settled rule appears to be if the lot is described as fronting or binding on a street which is designated on a public map or private plat, such description and calling for an unopened street raises an implied covenant that such right of way exists." And in the last of these cases this Court, through JUDGE PEARCE, said one of the essential elements or conditions of such a dedication is "a street designated on a map or plat made or adopted by the party himself as passing over his lands."

In the above mentioned cases there were maps and plats and the Court in what it said in those cases had reference to the facts which were at such times before it. And in those cases we do not understand the Court to have said that without a map or plat an implied covenant to dedicate a road or street to public use could not arise from a grant of land de-

scribed as binding on such road or street, if at the time, said road or street was actually opened or laid out, with a clearly defined width and capable of definite location and description. In such cases, however, the location of the road and such other facts as might be necessary in each particular case to arrive at the intention of the grantor in relation to the land or extent of land that was intended by him to be dedicated should be clearly proven, for the intention of the owner to dedicate his land to such use is absolutely essential, and unless such intention is clearly shown no dedication exists. *Pitts* v. *Baltimore,* 73 Md. 332; *Glenn* v. *Baltimore,* 67 Md. 390; *McCormick et al.* v. *Baltimore,* 45 Md. 524; *Tinges* v. *Baltimore,* 51 Md. 609; *Bloede* v. *Mayor, etc.,* 115 Md. 594; *Baltimore* v. *Northern Central Ry. Co., supra,* and others.

In the deed to Mrs. Moog the land conveyed is simply described as binding on Bonner road. The road is not further described or referred to, and the only evidence as to its width is that of Mrs. Yost, who testified that it was opened and laid down by her of the width of twenty feet.

It may be that the road has since been widened to the extent of forty feet for the use of those living upon the road, but if so, there is nothing, so far as disclosed by the record, showing that such widening was a dedication to public use, for the evidence discloses that before, at the time of, and long subsequent to the conveyance to Mrs. Moog, this road was closed by fences, gates and ropes placed at Winfield and Garrison avenues, and whatever travel there was upon the road by the general public was against the strong protest of Mrs. Yost, acting for herself so long as she was the owner of the land, and for her son after he became the owner of it. She states in her testimony that she put up fences across Bonner road at Garrison and Winfield avenues, and they were knocked down; she replaced them and they, in turn were destroyed; at other times she put up gates, locked them and gave keys to those living on the road, entitled to its use, and

these gates, too, were destroyed; she also used ropes to prevent public travel upon this road. These efforts to prevent the public use of this road continued so late as 1911, the year in which these proceedings were instituted. She also during this period of time warned all persons, other than those residing on the road, from using the road, and where she could, she stopped them.

It was said in the oral argument by counsel for the city that he understood it to be a *concessum* that the width of the road was forty feet. But in the brief of the plaintiff we find this language: "We cannot conceive how it can be argued that it was then forty feet wide, in the absence of any testimony to that effect, especially as Nellie B. Yost testified 'We built a road twenty feet wide from Garrison avenue to get in.' How can it be assumed that the Bonner road called for in the Moog deed was not this twenty-foot road, and if so, this would be the road which was dedicated, and the northern half of the present Bonner road, now forty feet wide, would still be not dedicated, and it was only for the northern half that any damages were asked." Therefore, we must consider the case as we find it presented to us by the record.

The only evidence as to the width of Bonner road is that of Mrs. Yost, and she says that it was laid out by her twenty feet wide. If the road has since been widened there is no evidence that it had been done at the time of the conveyance to Mrs. Moog. It has not been shown that at the time of such conveyance the road was more than twenty feet in width, and the burden was upon the defendant to prove this fact. If the road at such time was but twenty feet wide, the twenty feet of land now spoken of as the northern half of said road, was not then in the bed of the road, and could not have been dedicated under the grant to Mrs. Moog, and as we have already said, there is no evidence showing that it has otherwise been dedicated.

There is no dedication of the above mentioned strip of land twenty feet in width, whatever conclusion might be

reached as to the remaining twenty feet of the road, which we are not called upon in this case to decide. And having reached this conclusion there is no need of our passing upon any of the exceptions of the city except those touching the question of damages and benefits.

The only granted prayer of petitioner affecting the question of damages is the fourth, which states the measure of damages as to the ten-foot strip of land to be used in widening Bonner road. By it the Court was asked to instruct the jury "that in awarding damages to the petitioner they must take into consideration the value of his property before Bonner road has been widened ten feet, and the value of said property after it has been widened ten feet, and the measure of damages is the difference between what they find the aforesaid value to be." In connection with this prayer the Court granted the third, fourth, fifth, seventh, eighth and fourteenth prayers of the city, which the Reporter is asked to insert in the statement of the case.

The law of this case as to the damages to be allowed and the benefits to be assessed as presented by the petitioner's fourth prayer and the city's granted prayers as stated above, is in our opinion, as favorable to the city, as could be asked for by it.

After the witness Coale, a real estate agent, had testified as an expert to the value of the strip of land twenty feet wide, forming the northern half of Bonner road, subject to the rights of the grantees of Mrs. Yost to use the same, he was asked the value of the ten-foot strip which was to be used in widening the said road. The question was objected to by the City and the objection being overruled the twenty-fifth exception was taken, which is the first exception to the testimony touching upon the question of damages or benefits. The twenty-sixth exception is upon the ruling of the Court in permitting the witness Bond, also a real estate agent, to be asked the value of the twenty-foot strip of land. If to these questions the witnesses gave their estimates of the value of

the lands mentioned, it was open to the City upon cross-examination to inquire of them how and in what manner they arrived at such valuations, and to ascertain whether the methods by which they arrived at such valuation were the proper methods to be employed in such cases, and also to inquire as to the facts considered by them in arriving at such estimates of value.

The objections are to the questions and not to the answers and we can discover no reversible errors of the Court in permitting the questions to be asked, nor do we find any reversible error in the ruling of the Court upon the twenty-seventh exception.    In the twenty-eighth exception the Court was asked to strike out all testimony of the witness Bond "in reference to the value of the road or any land forming the bed or a portion of the bed of Bonner road."    This the Court refused to do and we find no error in its ruling thereon. There was at least some evidence that was properly admitted, that was, by this motion, asked to be stricken out.    *Jessup* v. *State,* 117 Md. 122.

The twenty-ninth exception is to the ruling of the Court in striking out the testimony of Clarence W. Biddle, assistant clerk to the Appeal Tax Court, who testified that prior to the opening of Bonner road the whole tract was assessed for taxes; and that after it was opened the assessment was removed from the bed of the road, but increased as to the remainder of the land.    On cross-examination he admitted that the beds of private streets or roads were no longer taxed or assessed, and therefore there was no distinction between this road and other private roads in respect to assessments. Upon the motion of the petitioner this evidence was stricken out.    Bernard was subsequently put upon the stand and the offer was made to show by him the reason that Bonner road was not assessed, that is, the land forming the bed of the road, but he was not permitted to testify in relation thereto. This forms the thirtieth exception.    In these rulings we think the Court committed no error.    We cannot see the

force and effect of this testimony, if admitted, upon the issues here presented, especially in view of the fact that we hold there was no dedication of the strip of land concerning which the inquiry was made.

The thirty-first, thirty-second and thirty-third exceptions are to the rulings of the Court in not permitting certain questions to be asked the City's witness Bernard, as to his method of reaching the value of the land sought to be condemned. The record discloses, without stating what was said by the witness, that he thereafter testified as to the value of the property to be taken by the City, the benefits to the remaining portions of the property of the petitioner and as to his "means of arriving at the value of the same." We are therefore unable to say that the City is injured by these rulings, for it may be that he was therefore permitted, in stating the means or methods by which he arrived at such valuation, to give in evidence, that which was excluded by the rulings complained of and therefore we cannot say that such errors, if errors at all, were reversible errors. What we have said as to the thirty-first, thirty-second and thirty-third exceptions also applies to the thirty-fourth and thirty-fifth exceptions.

In the cross-appeal of the petitioner there are but two exceptions, one to the admission of testimony and the other to the ruling of the Court upon the prayers. We will, however, not discuss or pass upon the rulings of the Court presented by these exceptions, for it is apparent to us from an examination of the whole case, that the rulings complained of have worked no injury to the petitioner and should it be held that the Court has erred in either or both of these rulings there is no reversible error. *W. U. Tel. Co.* v. *Lehman,* 105 Md. 452. The judgment appealed from will be affirmed.

*Judgment affirmed, with costs to the appellee in each appeal.*