JOHN M. GLENN, and WILLIAM L. GLENN, by his next friend, JOHN GLENN, heirs-at law of WILLIAM W. GLENN vs. THE MAYOR AND CITY COUNCIL OF BALTIMORE. THE MAYOR AND CITY COUNCIL OF BALTIMORE vs. JOHN M. GLENN, and WILLIAM L. GLENN, by his next friend, JOHN GLENN, heirs-at-law of WILLIAM W. GLENN.

*Dedication—Presumption repelled—Evidence.*

Reference in a lease to the City of Baltimore, to the several streets. inclosing the property leased, amounts to a dedication of such streets, so far as owned by the lessor, to the public, unless there be something in the other part of the lease, or in the facts and circumstances surrounding the transaction which prevents such a result.

But such presumption of intention to dedicate, growing out of the naming of the streets, is repelled by the facts that the lease contained a covenant on the part of the lessee to pay all assessments, when legally demandable, on the property, except such assessments. for benefits for opening the street and avenue named, as had been already made, or might thereafter be made, and a covenant on the part of the lessor to pay any assessments for benefits on the property conveyed, which had been or might thereafter be assessed for the opening of said street and avenue; and further that the street or avenue in controversy had never been used as a way or thorough-fare, either publicly or privately,—had no existence in fact,—was only a projected street or avenue on the plat of the city; that the lessor stood charged with it on the assessment books, and paid taxes,

Glenn *vs.* Mayor, &c. of Baltimore.

city and State, thereon; and that at the time of the execution of the lease the lessor was resisting, by appeal to the City Court, the contention of the city that the avenue in question had been dedicated to public use by those under whom the lesssor claimed.

APPEALS from the Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception.*—The petitioners prayed the Court to grant the following prayers:

1. The petitioners pray the Court to rule as a matter of law, and apart from the question of intention to dedicate, that in view of the express covenants contained in the lease of July 29th, 1880, from John Glenn, trustee, to the Mayor and City Council of Baltimore, there is no covenant implied in said lease upon which the claim of dedication set up in this case can rest.

2. That the lease of July 26th, 1880, from John Glenn, trustee, to the Mayor and City Council of Baltimore, construed with reference to the facts and circumstances surrounding the transaction, and given in evidence, does not establish any intention on the part of the lessor to dedicate the bed of the street in controversy, or any part thereof, to the public use.

3. That under a proper construction of the lease of July 29th, 1880, from John Glenn, trustee, to the Mayor and City Council of Baltimore, in the light of the facts and circumstances surrounding the transactions and given in evidence, the said lease did not have the effect of dedicating, and must be held not to have dedicated the bed of the street in controversy, or any part thereof, to the use of the public.

These prayers the Court (STEWART, J.) rejected, and the petitioners excepted. An inquisition was taken at bar, and the Court determined the damages to the property of the appellants at $2656.25, and the benefits at $2104.00.

The petitioners appealed from the rejection of their prayers by the Court, and the Mayor and City Council appealed from the decision of the question as made in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, and BRYAN, J.

*John M. Glenn,* and *S. Teackle Wallis,* for the Messrs. Glenn.

At the trial the appellants offered three prayers, all of which were rejected, and the Court delivered an opinion, holding that the western half of the bed of the street in controversy had been dedicated by the lease, but the eastern portion had not, and allowing substantial damages for the latter portion.

Dedication in Maryland rests upon the doctrine that where the description in a deed calls for a street, there is an implied covenant that the purchaser shall have the use of such street. *White vs. Flannigain,* 1 *Md.,* 525.

But in this case the express covenants in the lease exclude all implication of tacit covenants, and especially the implication of any covenant to part with the bed of the street from the merely descriptive language necessary to give the demised premises their location. The express covenants in the lease undeniably relate to the general subject-matter of the condemnation of the streets in question, and when the parties have dealt with that subject at all, as they have here, by express covenant, all implied covenants are, as matter of law, excluded. "All covenants that arise by implication of law are necessarily controlled or annulled by other express covenants between the parties. The generality of the implied covenants is thus, by mutual consent, restrained and qualified." *Morris vs. Harris,* 9 *Gill,* 27; *Merrill vs. Frame,* 4 *Taunton,* 329; *Line vs. Stephenson,* 4 *Bing. N. C.,* 678; *Line vs.*

*Stephenson,* 5 *Bing. N. C.,* 183 ; *Crouch vs. Fowle,* 9 *N. H.,* 219 ; *Weems vs. McCaughan,* 7 *Smedes & M.,* 422 ; *Vanderkarr vs. Vanderkarr,* 11 *Johns.,* 122 ; *Nokes' Case,* 4 *Coke,* 80 ; *Deering vs. Farrington,* 1 *Mod.,* 113.

In Maryland the question of dedication is one exclusively of intention ; and making property sold bound upon certain streets is only *evidence* of an intention to dedicate, which is liable to be rebutted by any legally admissible proof to the contrary. *Howard vs. Rogers,* 4 *H. & J.,* 278 ; *McCormick vs. Mayor, &c., of Baltimore,* 45 *Md.,* 512, 524 ; *White vs. Flannigain,* 1 *Md.,* 525 ; *Moale vs. Mayor, &c., of Baltimore,* 5 *Md.,* 314 ; *Hawley vs. Mayor, &c., of Baltimore,* 33 *Md.,* 270 ; *Hall vs. Mayor, &c., of Baltimore,* 56 *Md.,* 187 ; *Mayor, &c., of Baltimore vs. White,* 62 *Md.,* 362.

In this case there is more than sufficient proof to rebut any presumption of intention to dedicate arising from the language of the description.

The streets were named in the lease, as they were in the ordinance, for the exclusive purpose of localization and description. Dedication or surrender of damages was no part of the contract of lease, and was neither required nor intended by the parties. There was no other way of describing the square than the one adopted, and to hold that the city, by paying a ground rent for the demised property, not only obtained the term, but, by describing the boundaries, purchased a discharge from large damages, which it had already been sued for, in a proceeding still pending, and left pending, would be to make the equitable presumption of dedication a fraud and imposition. In the very lease, the lessor expressly covenanted to pay all assessments for benefits on the demised premises. If a release of damages had been contemplated, would not that have been expressed also?

The express covenants in the lease, the relation of the parties, the ordinance, the fact that the lessor has ever

since continued to pay the taxes on the bed of the street, and all the circumstances surrounding the case, demonstrate, from evidence legally admissible and not objected to, that it could not have been the expectation or requirement of the city, or the intention of Mr. Glenn, that he should surrender his large claim already allowed against the city in the case of John street, and amounting to more than one-fifth of the capitalized value of the ground rent created by the lease, or otherwise abandon his rights and claims to the beds of the streets or compensation for their condemnation.

The reference to the ordinance in the lease confines the effect of the lease to the requirements of the ordinance. *Glenn vs. Allison,* 58 *Md.,* 52.

*Robert Gilmor, City Counsellor,* for the Mayor and City Council of Baltimore.

By the established law of Maryland, the reference to the streets as contained in the lease, operated as a dedication of them, beyond all room for controversy, unless there is something in other portions of the deed, or in the facts and circumstances surrounding the transaction which prevents such operation.

Though the question of dedication *vel non,* is to be determined by ascertaining the intent of the parties, and in the Maryland cases involving the question of dedication, this intent has sometimes been found to exist, and sometimes not to exist; yet *all* the cases concur in declaring that where a party sells property lying within the limits of a city, and in the conveyance bounds such property by streets designated as such in the conveyance, such sale implies necessarily a covenant that the purchaser shall have the use of such streets, and he thereby also dedicates the streets, so called for, to public use, unless there is something else, either on the face of the deed or in the surroundings of the transactions, to rebut the presumption of an intent to

dedicate arising from this call for the streets in the deed or other instrument of conveyance. *White vs. Flannigain,* 1 *Md.,* 540 ; *Moale vs. Mayor, &c., of Baltimore,* 5 *Md.,* 321 ; *Hawley vs. Mayor, &c., of Baltimore,* 33 *Md.,* 280 ; *McCormick vs. Mayor, &c., of Baltimore,* 45 *Md.,* 524 ; *Tinges vs. Mayor, &c., of Baltimore,* 51 *Md.,* 600 ; *Holl vs. Mayor, &c., of Baltimore,* 56 *Md.,* 194 ; *Mayor, &c., of Baltimore vs. White and Shipley,* 62 *Md.,* 369.

Where a grantor conveys land bounding on a street or way, he and his heirs are estopped to deny the existence of such street or way, by virtue of the implied covenant therein contained. *Tobey vs. City of Taunton,* 119 *Mass.,* 404 ; *Fox vs. Union Sugar Refinery,* 109 *Mass.,* 292 ; *Stetson vs. Dow,* 16 *Gray,* 372 ; *Hawley vs. Mayor, &c., of Baltimore,* 33 *Md.,* 270 ; *McCormick vs. Mayor, &c., of Baltimore,* 45 *Md.,* 512.

A title acquired by the grantor, after he has conveyed by warranty land to which he had no title, enures to the grantee by estoppel. *Funk vs. Newcomer,* 10 *Md.,* 316 ; *Bigelow on Estoppel,* (4th *Ed.,*) 387 *to* 389 ; *Van Rensselaer vs. Kearney,* 11 *Howard U. S.,* 297.

The presumption is here as in all other cases, that the Glenn estate was fully compensated for the surrender of a litigated claim, prosecuted too, on *appeal,* by the price paid by the city for the large piece of property (two blocks) covered by the lease. *Tobey vs. Taunton,* 119 *Mass.,* 410 ; *McCormick vs. Mayor, &c., of Baltimore,* 45 *Md.,* 512.

IRVING, J., delivered the opinion of the Court.

The appeals in this case are from certain rulings of the Baltimore City Court in proceedings in that Court on appeal from the Commissioners for opening streets in the city of Baltimore in the matter of the opening of Patterson Park Avenue under ordinance 69 of 1876. The ordinance under which the proceedings were begun is entitled "An ordinance to *condemn* and open Patterson Park

Avenue, formerly Gist street, from Monument to Oliver street."

The question really involved is whether the appellants are entitled to substantial damages for a piece of ground (70) seventy feet wide ·by three hundred and twenty feet long, being part of Patterson Park Avenue, and lying between the north side of John street and the south side of Hoffman street. The Commissioners for opening streets decided they were entitled to nominal damages only, because it was supposed that this part of the avenue had been dedicated by the owner to public use as a street. From this decision John M. Glenn, and William L. Glenn by his next friend, as heirs-at-law of W. W. Glenn, appealed to the City Court. In that Court certain prayers were offered by them which were refused, and the Court to whom the case was submitted without the intervention of a jury, having found against the Messrs. Glenn, they have appealed to this Court.

The question whether there has been a dedication or not, depends upon the construction and effect of a certain lease executed by John Glenn, trustee, to the Mayor and City Council of Baltimore, dated 29th July, 1880. The property leased is thus described : "Beginning for the same at the southwest corner or intersection of Hoffman street and Gist street or Patterson Park Avenue, and running thence southerly, binding on the west side of Gist street or Patterson Park Avenue 320 feet, more or less, to the north side of John street, and running thence westerly, binding on the north side of John street 699 feet, more or less, to the east side of· Chester street, and running thence northerly, binding on the east side of Chester street 320 feet, more or less, to the south side of Hoffman street, and easterly, binding on the south side of Hoffman street 699 feet, more or less, to the place of beginning. Being the same premises which are named and described in the ordinance of the Mayor and City Council of Baltimore, entitled

'An ordinance authorizing the Mayor to lease a piece of ground bounded by Hoffman and John streets, Chester street and Gist street or Patterson Park Avenue,' and approved on the fifth day of April, 1880, in virtue of which this demise is executed and approved, and being part of the same property which by an agreement dated May 5th, 1869, and recorded in Liber G. R. No. 421, folio 77, of the land records of Baltimore City, Lawrence Sangston and others, trustees, agreed to convey to W. W. Glenn, and which by indenture dated the 28th of July, 1880, and intended to be recorded, the said trustees have conveyed to John Glenn, trustee."

The city contends, that by this reference in the lease to the several streets enclosing the property leased, the streets so far as owned by the lessor were dedicated as such to the public, unless there be something in the other part of the lease, or in the facts and circumstances surrounding the transaction which prevents such result ; and this unquestionably is the law. *White vs. Flannigain,* 1 *Md.,* 520 ; *Moale vs. Mayor, &c., of Baltimore,* 5 *Md.,* 521 ; *Hawley vs. Mayor, &c., of Baltimore,* 33 *Md.,* 280 ; *McCormick vs. Mayor, &c., of Baltimore,* 45 *Md.,* 524 ; *Mayor, &c., of Baltimore vs. White and Shipley,* 62 *Md.,* 369, *&c.*

The appellants, the Glenn heirs, concede this to be the law, but insist that the circumstances under which the lease was executed, and which surrounded the transaction, indubitably show no intention existed to dedicate the street, and that no such inference should be drawn from the lease. And apart from these circumstances, they contend, that the express covenants which are inserted in the lease effectually repel the presumption of an implied covenant, such as the city relies on to support its theory of dedication. Those covenants are as follows : "And the said Mayor and City Council of Baltimore for itself and its successors and assigns, covenant with said John Glenn, trustee, his heirs and assigns to pay the aforesaid rent,

taxes and assessments, when legally demandable, except such assessments for benefits for the opening of John street and Patterson Park Avenue, as have already been made or may hereafter be made under ordinances of the Mayor and City Council of Baltimore, passed and approved.

"And the said John Glenn, trustee, for himself, his heirs, executors, administrators or assigns, doth further covenant with the said Mayor and City Council of Baltimore to pay any assessments for benefits on the property hereby conveyed, which have been or may hereafter be assessed for the opening of John street and Patterson Park Avenue, under ordinances of the Mayor and City Council of Baltimore, now passed and approved."

In view of these express covenants in the lease the Court below was, by prayer, asked to say "there is no covenant implied in said lease upon which the claim of dedication set up in this case can rest." This first prayer rested entirely on the effect of the express covenants, and excluded any consideration of the facts and circumstances surrounding the transaction, which were relied on as repelling the idea of an intention to dedicate. The second and third prayers were directed to the circumstances surrounding the transaction, and from them the Court was asked to say no intention to dedicate existed or could be found. All these instructions asked on the part of the appellants, tne Messrs. Glenn, were rejected.

The facts of the case included in the bill of exceptions were all admitted. From those admissions it appears that "the ground in controversy has never been used as a way or thoroughfare, either by public or private parties, except as the same, in common with the contiguous ground, has been traversed in various directions without any particular path being followed, and there are no landmarks by which Patterson Park Avenue could be distinguished from adjacent ground, the whole lying in common." Notwithstanding the lease, all the ground in controversy has been

assessed to W. W. Glenn, and taxes have been paid, both city and State, by them on the property, until 1884. But it is also admitted that before the lease, and as far back as 1868 and 1869, and immediately before the property was assessed to W. W. Glenn, the taxes were abated, because the property was treated as city property. This, however, it should be stated in this connection, was claimed on account of supposed dedication prior to W. W. Glenn's title. It is also admitted in the agreed statement that at the time of the execution of the lease on which this contention now arises, there was a pending appeal from the decision of the Commissioners for opening streets, prosecuted by the Messrs. Glenn, these appellants, because of the failure of the Commissioners to allow them no more than nominal damages for opening this avenue, because the Commissioners decided that the same had been dedicated, by deeds, antedating W. W. Glenn's title, as a public highway; and that such appeal was not disposed of until the November following the July when the lease bore date, when those proceedings were quashed.

The old deeds upon which that contention arose are not involved here, as no point is made on them, and the whole contention of the city is rested on the terms of the lease already recited. The agreement on which the case was submitted below fixes the amount of damages to be allowed the Messrs. Glenn in the event of a reversal of the judgment or assessment of the Commissioners for opening streets, at $5312.53, and that they should be assessed for certain benefits for certain lots, the sum of $2928.00.

Having regard to the lease alone the express covenants would seem to exclude the idea of any implied covenant, growing out of the naming of the streets, (some of which, and especially the one now in controversy, had never been opened, but existed only in name, in a plan and plot of the city,) that such street should become public property, as and for a street, and that the lessor or his representa-

tives would never claim compensation for such use. In *Morris vs. Harris*, 9 *Gill*, 27, this Court said: "All covenants that arise from implication of law, are necessarily controlled or annulled by other express covenants between the parties. The generality of the implied covenants is, by mutual consent, thus restrained and qualified." *Noke's Case*, 4 *Coke*, 80, is cited, and the Court adds "this in subsequent authorities is recognized as the settled and established law." It is useless to cite further authority in support of a principle so unequivocally stated by our own Court.

The covenant contemplates the possibility of assessments other than for benefits, and covenants to pay them *expressly;* while it excepts assessments for benefits, and lessor covenants to pay these. Assessments for damages for condemnation must have been in the contemplation of the parties. But if there could be any possible doubt about it, the circumstances surrounding the transaction completely dispel it. This Court has repeatedly held that whether a dedication of a street or road was effected in any case, depends entirely upon the intention of the parties in each particular case; and that one of the methods of ascertaining the intention is by fairly considering all the circumstances surrounding the transaction and subject-matter. *Mayor, &c., of Baltimore vs. White & Shipley*, 62 *Md.*, 362; *McCormick vs. Mayor, &c., of Baltimore*, 45 *Md.*, 512; *Hawley vs. Mayor, &c., of Baltimore*, 33 *Md.*, 270-80.

Here the avenue had no existence in fact, and had never been used as a way, either publicly or privately. Proceedings were *in fieri* for its condemnation as such. It was only a projected street or avenue on the plan or plot of the city, and the city had taken steps to condemn it regularly, which involved the payment of damages unless they were waived. The Messrs. Glenn still stood charged with it on the assessment books and paid taxes, city and

state, thereon. In addition to these facts, at the time of the execution of this lease, the Messrs. Glenn were resisting, by appeal to the City Court, the contention of the city, that this avenue had been dedicated by deed by those under whom they claimed; and were insisting upon compensatory damages in lieu of the nominal damages awarded by the Commissioners of streets. That appeal was still prosecuted after the execution of the lease, until the proceedings, by which only nominal damages were allowed, were quashed some months subsequent to the execution of the lease. The lease not only did not provide for an abandonment of the existing appeal, but it was prosecuted, in one sense, to successful termination. This resistance of the city's claim that the avenue had already been dedicated by those who preceded the appellants in title and claim on their part for actual damages, which resistance was continued actively after the execution of the lease, tends very strongly to rebut the idea of intention to deddicate by the lease. In the face of these circumstances to hold that the streets are named in this lease by way of indicating an intention to dedicate, is, we think, making a most violent and unwarranted presumption. Ordinarily they might so indicate, but here they cannot. The descriptive words used in the lease are only such as were necessary unmistakably to define and describe the property the city leased. The ordinance had named the streets between which, and within which it authorized the Mayor to make the lease. To conform to that description and keep within it, the streets named in the ordinance were descriptively used in the lease, and the exact description of the property could not be otherwise given, and at the same time on the face of the paper show that the Mayor had acted within the limits of his authority under the ordinance. It has been contended that because at the time of the execution of the lease the lessor had title to only one-half of the road-bed of Patterson Park Avenue, the

rule by which deeds calling for streets are held to dedicate the streets, cannot be applied, because such rule contemplates that the grantor owns the whole street or road ; and that the subsequent acquisition of the other half did not enure to the city as contended by its solicitors. This aspect of the question, we have not found it necessary to examine into or decide upon. We will add to what we have said that we cannot think it could have been in the mind of the lessor that he was granting, or in that of the Mayor and City Council that they were acquiring, for a rental of $960, the beds of the streets which are of such value as the agreed statement of facts indicates.

We think the Court erred in rejecting the prayers of the appellants, (the Messrs. Glenn,) all of which should have been granted.

The city has also appealed according to this record, but we find in the record no ground for complaint on its behalf, unless it be in the assessment of benefits, which are by the covenant in the lease to be paid by the Glenn heirs, and which, by the agreement, was to be increased to $2928.00 in the event of substantial damages being awarded the appellants Glenn. The decision will be reversed, therefore, on each appeal, and the cause will be remanded, to the end that there may be a new trial, and a judgment in pursuance of the agreement of the parties in the event of reversal.

*Reversed and remanded.*

(Decided 22nd June, 1887.)