(Decided November 17th, 1898.)

---

# THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* THE NORTHERN CENTRAL RAILWAY COMPANY AND OTHERS.

*Dedication of Streets—Conveyance of Bed of Projected Street together with Abutting Land.*

When the owner of land, through which passes a street designated as such on a public or private map but not actually opened, conveys lots described as binding on such street and retains the fee in the bed thereof, then a dedication of such street to the public is made by implication. The dedication in such case is held to be made because there is an implied covenant by the grantor that the grantee shall have an easement or right of way in the street as a public street. But if the grantor conveys the bed of the street itself, together with the adjoining land, there is no such implied covenant and no dedication.

The owner of a tract of land through which ran a projected street not opened but designated on an official map, conveyed a part of the land, and described it as beginning in the centre of such projected street and running thence along the centre thereof, etc. *Held*, that this description did not constitute a dedication of the street to the public, but that the fee in one-half thereof passed to the grantee.

Appeal from The Baltimore City Court (WRIGHT, J.)

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, BOYD and PEARCE, JJ.

*John V. L. Findlay, City Counsellor,* for the appellant.

*Bernard Carter* (with whom was *William S. Bryan, Jr.* on the brief) for the appellees.

PEARCE, J., delivered the opinion of the Court.

In this case there are four appeals in one record from the Baltimore City Court, all of which depend upon the determination of a single question, and that question is whether the bed of Chase street lying between Patterson Park avenue and Mine Bank lane had been dedicated by the owners thereof as a public highway before the commencement of condemnation proceedings for the opening of Chase street, between Patterson Park avenue and Grove alley. This question was raised in the Court below by a prayer offered by the Mayor and City Council that such dedication had been made by a certain deed offered in evidence and mentioned in the prayer, which prayer was rejected, so that the correctness of the ruling in the rejection of that prayer is the only matter before this Court on these appeals.

George J. Appold and Samuel Appold being on the 6th of November, 1867, the owners in fee of a tract of land in Baltimore City, containing sixty-six acres, on that day sold and conveyed to the Mayor and City Council of Baltimore part of said tract, containing twenty-four acres, in trust for a site for the McDonogh Institute. The language of the grant was in the usual form of trust deeds and the tract conveyed was described as follows: "All that tract or parcel of land situate and lying in the City of Baltimore aforesaid, and described as follows, that is to say: Beginning for the same at the point or place where a line drawn along the centre of Chase Street will intersect a line drawn along the centre of Castle Alley: thence bounding easterly on the centre of Chase Street 1901 feet and 6 inches to the west side of Mine Bank Lane: thence northerly on the

west side of Mine Bank Lane 521 feet to the northeast corner of Appold's ground; then on the north line of said Appold's ground northwesterly 1915 feet until it intersects a line drawn along the centre of Castle Alley; thence southerly bounding on the centre of said alley 595 feet to the beginning; comprising part of the ground conveyed to the said George J. Appold and Samuel Appold by William H. Murray and other persons therein named by deed dated the 11th day of December, 1866, and recorded among the Land Records of Baltimore City in Liber A. M. No. 322, folio 500, &c., which said tract of land hereby intended to be conveyed contains 24 acres, 1 rod and 10 square perches of land, more or less, together with the buildings and improvements thereon made and being, and the rights, ways, easements, privileges and advantages thereto belonging, and all the estate and interest, right, title, claim, and demand at law and in equity of the said above mentioned parties of the first part, and each of them, in, unto and out of the said described property and premises. To have and to hold the tract or parcel of land and premises above described with the appurtenances unto and to the proper use and behoof of the Mayor and City Council of Baltimore aforesaid; *in trust*, however, for the uses and purposes, and subject to the trust, limitations and powers imposed, expressed and declared in the ordinance of the Mayor and City Council of Baltimore aforesaid, hereinbefore mentioned and referred to." All of the appellees hold their respective titles by mesne conveyances, acknowledged to be valid, either from the Mayor and City Council, and the Trustees of the McDonogh Educational Fund or from the Appolds as owners of the residue of the 66 acres, and no question as to the title of any of the appellees is raised by said prayer, which is as follows:

" The defendant prays the Court to instruct the jury that the lots of ground lying in the bed of Chase street, between the east side of Patterson Park avenue and the west side of Mine Bank lane, and for the taking of which by the City the appellants in the cases now on

430    BALTIMORE CITY vs. N. C. RY. CO.

Opinion of the Court.                    [88

trial claim compensation, have been dedicated by George J. Appold and wife and Samuel Appold and wife by the calls and descriptions in their deed to the Mayor and City Council of Baltimore under date of November 4th, 1867, and recorded in Liber G. R. No. 357, folio 334, &c. submitted in evidence, and the said appellants are entitled to only such damages as the jury shall find the fee simple interest in said land to be worth, subject to the public right of way over the same."

It appears from the bill of exceptions that there was no mention of Chase street or Castle alley in the deed from Murray to the Appolds, but that the sixty-six acres thereby conveyed, in fact embraced all the land in the bed of Chase street, between Patterson Park avenue and Mine Bank lane, and all the land northwardly and southwardly from Chase street for a long distance in either direction, both Chase street and Castle alley being within the lines of the tract as described in the deed from Murray; also that Chase street, Castle alley and Mine Bank lane were among the streets laid down on Poppleton's plat, made prior to 1817, and that the ordinance providing for condemning and opening Chase street from Patterson Park avenue to Grove alley was approved May 3rd, 1893. The law governing the dedication of land as a public highway has been very frequently before this Court, and its general principles are definitely and firmly established. In every case, an intent on the part of the owner to dedicate his land to the particular use alleged is absolutely essential; and unless such intention is clearly proved by the facts and circumstances of the particular case no dedication exists. Dedication will be presumed where the facts and circumstances clearly warrant it; or it may be rebutted and altogether prevented from arising by circumstances incompatible with the supposition that any dedication was intended. We quote from the cases of *McCormick* v. *Mayor and City Council of Baltimore,* 45 Md. 524, and *Glenn* v. *Same,* 67 Md. 390. In the present case the appellant's counsel frankly admits in his brief that " *The single question involved is, whether the Appolds, by the*

*calls and descriptions in their deed, intended to grant to their*
*purchasers and assigns, the use of Chase Street, as a street*
*. . . The question is, what did the grantors mean when*
*they referred to the street; was it the mere language of*
*boundary, or did it convey on their part an intent that the*
*ground in the bed of the street should be used as a street?* "

It is settled by many decisions that if a street be desig-
nated on a plat, made by authority, or by the party him-
self, as passing over certain lands, and the owner sub-
sequently conveys lots *fronting or binding on such streets,*
*he remaining the owner of the fee in the bed of the street,*
this is held to be a dedication of the land over which the
street passes to the public use, and on opening the street
the owner of the fee will be entitled to nominal damages
only, as compensation.    In such case, it is held that the
existence of the street entered into the consideration of
the purchase, and that the grantor has been thus com-
pensated for the use of his ground in the bed of the
street, as a public street, and that he is therefore estop-
ped to claim further compensation from the public.
*McCormick* v. *Mayor and City Council,* 45 Md. 524;
*Tinges' case,* 51 Md. 600; *Pitts' case,* 73 Md. 326; *Fler-*
*sheim's case,* 85 Md. 492.    With full recognition by the
appellant's counsel of this doctrine, he proceeds to state
as the basis of his argument for a reversal of this judg-
ment the proposition that the naked reference of the
deed to Chase street creates a presumption in favor of
the intention to dedicate; and that in the absence of
circumstances sufficient to rebut it the presumption will
stand; and to sustain the proposition he cites the fol-
lowing cases:    *White* v. *Flannigan,* 1 Md. 525; *Moale's*
*case,* 5 Md. 314; *Hawley's case,* 33 Md. 270; *McCormick's*
*case,* 45 Md. 512; *Hall's case,* 56 Md. 187; *Glenn's case,*
67 Md. 390 and *White's case,* 62 Md. 362.    We have
carefully examined each of these cases with reference to
the purpose for which they are cited by appellant, but
in none of them, nor indeed elsewhere, have we found
the proposition above stated to be either announced or
implied.    In all of these cases, except that of McCor-
mick and possibly that of White in 62 Md., the convey-

ances called " *to bind on*," or were " bounded by " designated streets of *the entire bed of which at that point the grantor or lessor remained the owner in fee*.   In *Moale's case*, 5 Md. 314, lots 1 to 10 were sold by a trustee in Chancery.   Lots 2, 4, 5 and 10 were described in the advertisement as binding on Biddle street, as laid down on Poppleton's plat, but not then opened.   Lot 2 laid on the south side of the street and lot 4 directly opposite on the north side; lot 3 was described as the bed of Biddle street, between lots 2 and 4.   Lot 10 was described as binding on the north side of Biddle street and lot 9 as the bed of Biddle street, in front of lot 10, and Moale was *then the owner* of the lot on the south side of Biddle street, adjoining lot 9.   At the public auction, Moale purchased lot 1 (which did not bind on the street), and Judge Frick, *at the same sale*, purchased lot 4, which did bind on the street, and subsequently at private sale Moale purchased lots 9 and 10.   Biddle street was subsequently opened and Moale claimed damages for lots 3 and 9, both of which laid in the bed of the street. JUDGE LE GRAND, in the opinion in that case, says: " Lot 2 was not purchased by the appellant until after the sale to Judge Frick of lot 4, and therefore subject to any rights which Judge Frick acquired by his previous purchase, among which according to the principles we have indicated (referring to *White* v. *Flannigan*), was the right to the use of Biddle street, *as a street* between Cathedral and Decker.   So far therefore as lot No. 3, which is the bed of Biddle street, is concerned, we think the appellant only acquired by his purchase the naked fee in it subject to an easement or right of way not only in Judge Frick, but in the public, and this being so, he is entitled to but nominal damages for its condemnation.   But in regard to lot No. 9, we think the case different.   Prior to his purchase of lot No. 10, the appellant was the owner of the lot on the south side of Biddle street, opposite lot No. 10, and when therefore he purchased lots Nos. 9 and 10, he acquired a complete title to the three lots, and is just as much entitled to be compensated for lot No. 9 as would have

been the original proprietor of it in the absence of all dedication. In regard to it there is no supervening or conflicting right, as there is in regard to lot No. 3." The principles applied in *Moale's case* were extended and applied to the facts in *Hall's case*, 56 Md. 187, which JUDGE BARTOL there said was " almost identical " with *Moale's case*, and which grew out of proceedings for opening Wolfe street from Monument to North avenue, under an ordinance approved in 1878. In that case, Van Camp, being then the owner of the fee in the bed of Wolfe street and of adjoining lands on both sides, in March, 1848, conveyed to Leach two parcels of ground, one on the east and one on the west side of Wolfe street, directly opposite to each other, and in this conveyance bounded said parcels respectively on the east and west sides of said street. In August, 1849, Wolfe street being still unopened, Van Camp sold and conveyed to Leach in fee, together with other lands, the bed of Wolfe street, between the two parcels theretofore conveyed, as described in Poppleton's plat, and thereby Leach became entitled to the fee of the whole tract between Belair road and Washington street, which embraced the bed of Wolfe street. Upon these facts it was held that by the deed of 1848, *so long as it stood alone* there was an implied covenant in favor of Leach, the grantee, to a right of way in that part of Wolfe street, which right Van Camp, the grantor, or any one *claiming under him* as owner in fee of the bed of the street, would be estopped from denying. But it was further held that this implied covenant, arising upon the deed of 1848, was rescinded and abrogated by the deed of 1849, whereby Leach acquired the fee simple in the bed of Wolfe street; " and consequently all right of the public to the use of the street, as the same could be derived only from the implied covenant of the parties, no longer existed." The extension of the principles announced in 1 Md. and 5 Md., which we have said was made in 56 Md. is found in the declaration of the Court, that even where an implied covenant has arisen, as it did under the first deed in that case, it will be abrogated

and dedication will be defeated by the acquisition of the fee in the bed of the street by the owner of the land binding on each side of the street—provided the street is still unopened and no supervening or conflicting right has arisen under the previous inchoate dedication. In *McCormick's case* the call in the conveyance was to the middle of the street, but this was held to be merely the language of boundary; the Court saying: " The streets though unopened and unused were delineated on the public plat of the city, and were therefore convenient and proper land marks in the division of the land."

The whole doctrine of dedication to use as a public highway as developed in the decisions in this State rests upon implied covenant to an easement in the highway, and there can be no presumption of dedication where this foundation is wanting. The essential elements or conditions of such a dedication are as follows: 1st a street designated on a plat made or adopted by the party himself as passing over his lands. 2nd. A subsequent conveyance by him, of lots binding on such street, and 3rd, the retention at the time of the conveyance by the owner of the fee in the bed of the street. We have found no case of dedication of a street in our Reports where any one of these elements is absent, and we believe none can be found, because in the language of the appellees' brief the grant of any part of the street lying alongside of the lot conveyed " is destructive of the foundation on which, under the decisions of this Court rests the inference of an intent to dedicate a street from the grant of land not embraced within the lines of the street."

The Appolds in their deed to the Mayor and City Council, *Trustee,* conveyed to it, *as one parcel,* each and every part of the land therein described, and the conveyance was of the fee. If the interest or estate taken by the grantee in that part of the land north of the north line of Chase street was a fee, it follows that the interest or estate taken in that part of the land south of the north line of Chase street was equally a fee. The expressed intent to vest in the grantee a fee in that part of the bed of the street between the north line and the centre of

BALTIMORE CITY vs. N. C. RY. CO.     435

Md.]                    Opinion of the Court.

the street, is incompatible with the reservation of the fee in that part of the bed of the street to the grantor and repugnant to the presumption of an intention to create an easement therein in favor of the grantee, and through him, in favor of the public.   As was said in *McCormick's case:*  " Such presumption is altogether prevented from arising by circumstances incompatible with the supposition that any dedication was intended; " or in the strong language of the appellees' brief:  " By that deed the *power* of the Appolds to dedicate the northern half of Chase street as laid down on Popple- ton's plat *was destroyed,* the title to this one-half being in the Mayor and City Council in trust."

If any dedication could be made by that deed, it must be of Chase street as delineated on the plat alongside of the lot binding on the street; *that is of the whole of Chase street as thus delineated, and not of the half or any part less than the whole alongside of said lot.*   This deed speaking as it does, *uno flatu,* cannot operate both as a grant of the northern half of Chase street in fee, and as a dedication of the southern half of the same street as a public highway.   It follows from what we have said that there has been no dedication of the bed of Chase street between Patterson Park avenue and Mine Bank lane and that there was no error in refusing the prayer asserting that such dedication had been made.

We shall therefore affirm the judgment of the Balti- more City Court.

*Judgment affirmed with costs above
and below.*

(Decided November 17th, 1898.)