VICTOR G. BLOEDE AND DANIEL A. LEONARD *vs.*
THE MAYOR AND CITY COUNCIL OF BALTI-
MORE, AND THE COMMISSIONERS FOR
OPENING STREETS IN THE
CITY OF BALTIMORE.

*Dedication of Streets.*

Ordinance No. 26 of the Mayor and City Council of Balti-
more, approved April 29, 1907, provided for the opening of
Eleventh street over the lands of the appellants, who claim
compensation therefor; the Street Commissioners held that
the street had been dedicated to public us and allowed nomi-
nal damages only. On appeal to the Baltimore City Court,
the commissioners' act was ratified. *Held,* that there had
been no dedication of the bed of the street of the appellants.

p. 603

*Decided June 24th, 1911.*

Appeal from the Baltimore City Court (ELLIOTT, J.).

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE, PATTISON and URNER, JJ.

*William P. Lyons,* for the appellant.

*Joseph S. Goldsmith* and *German H. H. Emory,* for the
appellee.

PATTISON, J., delivered the opinion of the Court.
Ordinance No. 261 of the Mayor and City Council of
Baltimore, approved April 29th, 1907, provided for the open-
ing of Eleventh street over the lands of the appellants, who
claimed compensation therefor; but the Street Commission-

ers held that this street had been dedicated to public use and
allowed them only nominal damages.  An appeal was taken
therefrom to the Baltimore City Court.   That Court dis-
missed the appeal and ratified the award of the commission-
ers.   The case is before us upon the exceptions to the rulings
of the Baltimore City Court upon the admissibility of evi-
dence and the granting of the defendant's prayers and the
rejection of the first and second prayers of the petitioners.

"The law governing the dedication of land as a public
highway has been very frequently before this Court, and its
general principles are definitely and firmly established.   In
every case, an intent on the part of the owner to dedicate
his land to the particular use alleged is absolutely essential;
and unless such intention is clearly proved by the facts and
circumstances of the particular case no dedication exists.
Dedication will be presumed where the facts and circum-
stances clearly warrant it, or it may be rebutted and alto-
gether prevented from arising by circumstances incompatible
with the supposition that any dedication was intended."
*Baltimore City* v. *N. C. Ry. Co.*, 88 Md. 430 ; *Pitts* v. *Mayor
and City Council of Baltimore,* 73 Md. 332 ; *McCormick* v.
*Mayor and City Council of Baltimore,* 45 Md. 524; *Glenn*
v. *Same,* 67 Md. 390.

"It is settled by many decisions that if a street be desig-
nated on a plat, made by authority, or by the party himself,
as passing over certain lands, and the owner subsequently
conveys lots *fronting or binding on such streets, he remain-
ing the owner of the fee in the bed of the street,* this is held
to be a dedication of the land over which the street passes to
the public use, and on opening the street the owner of the
fee will be entitled to a nominal damage only as compensa-
tion.  In such case, it is held that the existence of the street
entered into the consideration of the purchase, and that the
grantor has been thus compensated for the use of his ground
in the bed of the street, as a public street, and that he is there-
fore estopped to claim further compensation from the pub-
lic."   *Baltimore City* v. *N. C. Ry. Co.; McCormick* v. *Mayor*

*and City Council; Tinges' case,* 51 Md. 600; *Pitts* v. *Mayor and City Council of Baltimore; Flersheim's Case,* 85 Md. 492.

"The whole doctrine of dedication to use as a public highway as developed in the decisions in this State rests upon implied covenant to an'easement in the highway, and there can be no presumption of dedication where this foundation is wanting. The essential elements or conditions of such a dedication are as follows: 1st. A street designated on a plat made or adopted by the party himself as passing over his lands. 2nd. A subsequent conveyance by him of lots binding on such street; and 3rd. The retention at the time of the conveyance by the owner of the fee in the bed of the street." *Baltimore City* v. *N. C. Ry. Co.,* 88 Md. 430.

This case must, therefore, be disposed of by the application of the principles established by these authorities.

In the agreed statement of facts found in the record, it is conceded "that the only question sought to be raised by this case is whether or not there has been a dedication of Eleventh street, to the width of sixty-six feet, through the lands of the petitioners."

In the year 1901 an ordinance was passed by the Mayor and City Council of Baltimore providing for the acquisition of a lot of ground in the western section of the city, not less than twenty-five acres in area, for a public park, the same to be located west of Gwynn's Falls, east of Heald's lane, south of Edmondson avenue, and north of Frederick road. At this time the fee simple title to a tract of land containing 23 6/10 acres, including that part of the bed of Eleventh street which is the subject of this controversy, was vested in Samuel D. Schmucker and Robert C. Davidson, surviving trustees of the estate of Henry Clay Miller. Daniel A. Leonard, one of the appellants, at that time president of an improvement association in that section of the city, being interested in the establishment of the proposed park, obtained from the said trustees, at the request of Thomas G. Hayes, then Mayor of the city, an option for the purchase of said land for the sum

of $10,000. The option, though given to Leonard, contained, among others, the following condition: "That the said land, when and if purchased at the above price by said Leonard, shall be transferred by him to the Mayor and City Council of Baltimore for use as a public park."

The city officials, after examination and investigation of the lands described in the option, concluded that they did not want that part thereof lying to the west of the east side of Eleventh street (the proposed street), "as defined on the official plat of Baltimore county made by William A. Shipley, county surveyor, in the year 1876," but would purchase that part lying to the east of the east side of said Eleventh street, which contained about ten acres, for which they would pay the sum of $4,237.29, or $423.729 per acre, being the same amount per acre at which the entire lot was offered under the option. The trustees, however, would not sell a part of the lot unless at the time of the sale thereof a purchaser could be found for the remainder of it. It was then that Leonard approached a number of persons soliciting them to purchase the balance of said lot. He finally succeeded in interesting Victor G. Bloede, one of the appellants, who agreed to purchase the entire balance of said lot, about 13 6/10 acres, at and for the sum of $5,762.71, being the same amount per acre at which the city had agreed to purchase the ten acres.

· The evidence discloses that at the time that Bloede agreed to purchase this part of said lot, something was said about Leonard joining him in the purchase, but Leonard states that at the time he did not have the money and was not able to join him in the purchase and so told Bloede, and did not join him. He testified that at the time he had no definite understanding that he would thereafter acquire an interest in said lands, although he had "a sort of indefinite understanding." Eight years thereafter, in 1909, an undivided one-half interest in said lands was conveyed by Bloede to Leonard.

The city having agreed to purchase the ten acres lying to the east of the east side of Eleventh street, and Bloede having agreed to purchase the 13 6/10 acres lying to the west of the east side of said street, and the trustees having agreed to accept their offers so made, they reported the sale to the Circuit Court for Baltimore City.

It is stated by the trustees in their report:

"That out of said tract of 23 6/10 acres * * * they have sold, subject to the ratification of this Court, to the Mayor and City Council of Baltimore, for use as a public park, all that part thereof which *lies East of the East side of Eleventh street,* and containing about ten acres, for the sum of $4,237.29."

"That subject to the ratification of this Court and upon the condition hereinafter mentioned, they have sold to Victor G. Bloede, at and for the sum of $5,762.71, all the remaining part of said above-mentioned tract of land, which remaining part contains 13 6/10 acres of land, and in all that part of said land which *lies West of the East side of Eleventh street."*

"The sale to Victor G. Bloede, above mentioned, was made upon the understanding and condition that if the sale to the Mayor and City Council of Baltimore, hereby reported, of the other portion of the entire lot owned by your trustees, should fail of ratification, then the sale to the said Bloede, above reported, shall not be binding, and he shall be entitled in that event to be released therefrom."

Upon this report are endorsed the following agreements:

"The Mayor and City Council of Baltimore has agreed to buy upon the terms above mentioned the property above reported as sold to the Mayor and City Council of Baltimore.

(Signed)    T. R. CLENDINEN,
*President Park Commission."*

"I hereby agree to buy, upon the terms above mentioned, the property above reported as sold to me.

(Signed)    VICTOR G. BLOEDE."

The sales of these lots were finally ratified by the Court on the 21st day of May, 1901. On the following day, May

22nd, a deed was executed by George Whitelock, trustee, to the said Samuel D. Schmucker and Robert C. Davidson, trustees, conveying to them the said lot of land of 23 6/10 acres, together with other lands they had purchased from the said Whitelock, trustee, but for which no deed had before been executed or conveyance made; and on the same day the lots so purchased by the city and Bloede were conveyed by Samuel D. Schmucker and Robert C. Davidson, trustees, to the respective purchasers.

In the deed from Whitelock, trustee, to Samuel D. Schmucker and Robert C. Davidson, trustees, the following clause was inserted: "All references to streets, rights of way or roads in the foregoing description are intended for convenience of description, and said references are hereby declared not to operate or to be intended to operate as a dedication of any of said streets, rights of way or roads to public use."

The only part of this deed before us is the clause above stated. This clause, at least, discloses that there was to be no dedication of any part of said lot under that deed, and that the fee in the whole of the lot was to pass, and did pass, to the grantees.

Leonard joined with the trustees in the execution of the deed to the city for the ten acres purchased by it. The reason therefor is given in the following clause appearing in the deed: "Whereas the said Board of Park Commissioners agree to purchase from the said parties of the first part (the trustees), through the said Daniel A. Leonard, to whom an option had been given for said purchase, and who unites in these presents for the purpose of conveying any interest under said option he may have thereby acquired in the land." In this deed the land is referred to as "binding on the east side of Eleventh street."

In the deed to Bloede from the trustees they conveyed to him, in fee simple, all that part of said lot of 23 6/10 acres which lies west of the east side of Eleventh street, containing 13 6/10 acres, more or less. It is true, the option to pur-

chase the entire lot of 23 6/10 acres was given to Leonard, but it will be recalled that it was so given that in the event of its being exercised and a sale made thereunder, the property was to be transferred to the city. This option was never exercised because of the unwillingness of the city to purchase the whole of said lot. Thus their unwillingness to purchase the whole thereof defeated the exercise of the option. Negotiations, however, were continued along different lines, which, as shown by the record, resulted in the sale of the land by the trustees to the city and Bloede. Although Leonard was active and instrumental in bringing about the sale of this land, it can not be said that the sale thereof was made to him. In the whereas clause of the deed from the trustees to the city, above given, the city recognizes and so states that the purchase was made by it from the trustees, and therein explains, in a manner not at all inconsistent with the fact that the land was so purchased from the trustees, why Leonard had joined with them in the execution of the deed.

The trustees wished to sell the entire lot, and would not sell to the city a part thereof unless at the time of such sale a purchaser could be found for the balance, and as a result of the efforts of Leonard a purchaser therefor was found in the person of Bloede. That they might be assured of the sale of both lots of land and to prevent the sale of one without the other, the trustees made and reported the sales to the city and to Bloede at the same time, and made the sale of one conditional upon the sale of the other, and to more effectually accomplish the purpose sought, agreements were endorsed upon the report of sales whereby the city, through the President of the Park Board, agreed to buy, upon the terms mentioned in the report, the property sold to the city, and Bloede agreed to buy, upon the terms mentioned in the report, the property sold to him.

The said trustees, owners of the entire lot, pursuant to these sales made, reported and ratified on the same days, on the 22nd day of May, 1901, conveyed unto the City of Baltimore all that part of the lot that lies eastward of the east

side of Eleventh street, and upon the same day conveyed *in fee simple* to Bloede all that part of said lot that lies westward of the said east side of said Eleventh street. By these grants, executed at the same time and with simultaneous effect, the grantors reserved or retained in themselves no part or interest in said lot of land.

At the time of the purchase of this lot of land by the city its officials were fully informed of the terms and conditions under which the part thereof described in the report of sales was to be sold and conveyed to Bloede, and they knew full well the extent of his holdings and interest to be acquired thereunder. They knew that by the report of sales, upon which is endorsed their agreement to buy, that all that part of the lot of 23 6/10 acres lying west of the east side of Eleventh street was to be conveyed in fee simple to Bloede, and that to them was to be conveyed only the part thereof lying to the east of said east side of said street, and that by the terms and conditions of said sales no interest in said lands was reserved or retained by the grantors.

To find that there has been a dedication to public use of that part of Eleventh street passing over the land of the appellants, it is first necessary to find the existence of an implied covenant to an easement in said street created by the sale and conveyance to the City of Baltimore by the said trustees of the aforesaid ten acres of land. Before such a covenant can be found to exist we must find the existence of *all* the above stated essential elements or conditions of such a dedication. In our opinion, the third essential element or condition—"the retention at the time of the conveyance by the owner of the fee in the bed of the street"—is wanting in this case.

"A party should not be deprived of his property without compensation, unless there has been some clear and decisive act of dedication," and "as the city makes the claim to exemption from real or substantial compensation for the land taken for the street by reason of the alleged previous dedication to that purpose, it is incumbent upon it to establish

clearly and beyond doubt that such dedication has been made." *McCormick* v. *Mayor, etc., of Baltimore.*

It will be borne in mind that it is only in the deed, and not in the report of sales, that the lot sold to the city is mentioned and referred to as "binding on the east side of Eleventh street." The report which forms the basis for the description in the deed, and to which the deed in its description should conform without material variance, described the lot of land so bought by the city as "all that part of said lot which lies east of the said side of Eleventh street."

At the time of the conveyance by the trustees of the lots so purchased by the city and Bloede, respectively, these lands were open or farm lands and not enclosed. There was no fence upon the east side of the proposed Eleventh street upon the line of division between these lots, but this line was marked by stones that had been placed there by the county authorities years before, and after its purchase this line was further marked by additional stones placed upon the line by the Park Board. The line of the west side of the proposed street was, and is to this time, not marked at all, either by fence or stones. The bed of this street, as well as the other part of the lot conveyed to Bloede, was, before the conveyance, cultivated as farm lands, and since which time has continued to be so cultivated, and the park lot remains unenclosed and in the same condition as when purchased by the city, with the exception that within the last year or two "some cleaning up" has been done upon it.

With the bed of the proposed street in the open, cultivated field, and with nothing to mark its western limits, but with its line upon the eastward side clearly marked, affording convenient means of location and description, it can not be said, when these facts are considered with other facts and circumstances of the case, that it is "established clearly and beyond doubt that the reference to the street was for the purpose of dedication and not for the purpose of location and description."

"Dedication may be rebutted and altogether prevented from arising by circumstances incompatible with the supposition that any dedication was intended." *Baltimore City v. N. C. Ry. Co.* In this case the existence of an implied covenant to an easement in said street, created by the aforesaid conveyance to the city, is inconsistent with the express grant of the fee simple interest in the lands forming the bed of the street, made by the trustees to Bloede at the time of the execution of the deed to the city.

It follows from what we have said that there has been no dedication of the bed of Eleventh street over the lands of the appellants, and that there was error in granting the defendant's prayers asserting that such dedication had been made, and in refusing the petitioners' first and second prayers, in which it is asserted that there had been no dedication of the bed of said street. Having decided that there was no dedication, we do not think it necessary to pass upon the exceptions taken to the admission of certain testimony. We shall therefore reverse the judgment of the lower Court.

*Judgment reversed and new trial awarded, with costs to the appellants.*